**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| THE TRANSPARENCY PROJECT, | § | |
| | § | |
| Plaintiff, | § | CIVIL NO. 4:20-CV-00467-SDJ-CAN |
| | § | |
| v. | § | |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, | § | JUDGE SEAN D. JORDAN |
| et al., | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF VANNA BLAINE,**
**INFORMATION REVIEW OFFICER,**
**LITIGATION INFORMATION REVIEW OFFICE,**
**CENTRAL INTELLIGENCE AGENCY**

I, VANNA BLAINE, hereby declare and state:

**I.**    **INTRODUCTION**

1.    I currently serve as the Information Review Officer ("IRO") for the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA" or "Agency").  I have held this position since February 2020.  Prior to becoming the IRO for LIRO, I served as the Deputy IRO for LIRO beginning in April 2019, during which time I also served as the Acting IRO in the IRO's absence.  Prior to becoming the Deputy IRO for LIRO, I served as the office's Litigation Production Manager for 24 months.  In that capacity, I was the senior litigation analyst responsible for managing and tracking case assignments, as well as litigation deadlines.  In this role, I also conducted second-

line reviews of Agency information subject to litigation, making
classification and release determinations regarding such
information when necessary.  Before serving as the Production
Manager, I was an Associate Information Review Officer for the
Director's Area of the CIA for 11 months.  In that role, I was
responsible for making classification and release determinations
for information originating within the Director's Area, which
included, among other offices, the Office of the Director of the
CIA, the Office of Congressional Affairs, the Office of Public
Affairs, and the Office of General Counsel.  Prior to that, I
was an Associate Information Review Officer and Team Lead in
LIRO for 28 months, where I performed similar review functions,
routinely making classification and release determinations
regarding Agency-wide information subject to pending litigation.
I have held other administrative and professional positions
within the CIA since 2007 and have worked in the information
review and release field since 2014.

2.    I am a senior CIA official and hold original
classification authority at the TOP SECRET level under written
delegation of authority pursuant to section 1.3(c) of Executive
Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010) (discussed in
further detail below).  This means that I am authorized to
assess the current, proper classification of CIA information, up
to and including TOP SECRET information, based on the

classification criteria of Executive Order 13526 and applicable regulations. As part of my official duties, it is my responsibility to ensure that any determinations as to the release or withholding of any such documents or information are proper and do not jeopardize the national security.

3.   Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

4.   This declaration supports the Government's Motion for Summary Judgment in this case. The purpose of this declaration, in connection with the CIA's accompanying *Vaughn* Index (attached as **Exhibit A**), is two-fold. First, it is to provide the Court with a description of the records at issue. Second, it is also to justify the CIA's invocation of a Glomar response for some parts of the requests, as well as the CIA's invocation of FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E) in response to the remaining parts of the requests. The CIA's assertion of these FOIA exemptions is to withhold from release classified and statutorily protected information, privileged material, and personally-identifying information.

5.     Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA requests.  I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

## II.   <u>BACKGROUND</u>

6.     On May 28, 2020, The Transparency Project submitted to the CIA a FOIA request ("May 2020 CIA Request").  A true and correct copy of the May 2020 CIA Request is attached as **Exhibit B.**  The following is a summary of the eight categories of requests that The Transparency Project included in the May 2020 CIA Request:[1]

(1)   All metadata, communications (internal or external), records, documents, reports or other evidence regarding whether the CIA, its Directorate of Digital Innovation, or any of the CIA's foreign or domestic affiliates, agents, employees or contractors played a role in inserting Russian "fingerprints" (*e.g.*, "COZY BEAR" or "FANCY BEAR") into date from the 2016 Data Breach.  Per the request "2016 Data Breach" refers to the removal, transfer, copying or stealing of data from Democratic National Committee computer servers in 2016.

(2)   All tangible evidence indicating whether the 2016 Data Breach was the result of (1) outside forces (*e.g.*, Russian agents, Pakistani agents, etc.) who hacked the servers from a

---

[1] This summary is based on the language in the May 2020 CIA Request.  The request itself contains additional text not included here, such as examples provided by The Transparency Project of what the CIA should consider responsive to parts of the request.

remote location or (2) an individual or individuals who were present at or inside DNC facilities and copied the data onto a storage device.

(3)   All documents, records, and/or communications that (1) identify the name and agency affiliation of each member of the task force / working group as well as (2) the dates that each such person began and ceased working with the group.  And,(3) all documents, records, and/or communications indicating whether the task force / working group fabricated or attempted to fabricate evidence of collusion between Donald Trump (or his presidential campaign) and Russian officials.  Per the request, former Director Brennan testified that in the summer of 2016 he convened a task force / working group involving CIA, NSA, and FBI to investigate intelligence showing contact between Russian officials and Trump affiliates.  The request refers to this task force / working group.

(4)   For the period from January 20, 2009 until the present, all documents, records, communications, and guidelines reflecting any plans or efforts by the CIA to gain, cultivate or exercise influence over any U.S. journalist or journalism entity.

(5)   For the period from January 20, 2009 until the present, all documents, records, communications, and guidelines reflecting any plans or efforts by the CIA to gain, cultivate or exercise influence over any U.S. social media company (e.g., Facebook or Twitter) for purposes of influencing its algorithms or the prevalence of (1) particular posts or publications or (2) particular types of posts or publications.

(6)   For the period from January 20, 2009 until the present, all documents, records, communications, and guidelines reflecting any plans or efforts by the CIA to gain, cultivate or exercise influence over any U.S. search

engine company (*e.g.*, Google) for purposes of influencing its algorithms or the prevalence of search results.

(7)  For the period from January 20, 2009 until the present, all documents, records, communications, and guidelines reflecting any plans or efforts by the CIA to surveil journalists and/or journalism companies in the United States.

(8)  For the period from January 20, 2009 until the present, all documents, records, communications, and guidelines reflecting any plans or efforts by the CIA to influence the contents of any entertainment production in the United States, *e.g.*, movies, television programs, radio programs, podcasts, Netflix productions, etc.

7.    The CIA sent The Transparency Project a letter on June 15, 2020 acknowledging that the CIA received the May 2020 CIA request.  A true and correct copy of that acknowledgment letter is attached as **Exhibit C.**

8.    On June 18, 2020, The Transparency Project submitted to the CIA another FOIA request ("June 2020 CIA Request").  A true and correct copy of the June 2020 CIA Request is attached as **Exhibit D.**  In the June 2020 CIA Request, The Transparency Project sought the following:[2]

(1)  All documents, records, or communications and/or other tangible evidence reflecting or pertaining to surveillance of Edward Butowsky of Texas or Matt Couch of Arkansas.

---

[2]  This summary is based on the language in the June 2020 CIA Request.  The request itself contains additional text not included here, such as how to define the term "surveillance" and what the CIA should consider responsive.

> (2)   All documents, records, communications and/or other tangible evidence pertaining to whether former Central Intelligence Agency Director David Petraeus mishandled classified information or sold such information during his tenure as CIA director.

9.   The Transparency Project filed the above-captioned lawsuit on June 12, 2020.  On July 20, 2020, The Transparency Project filed its First Amended Complaint, naming, for the first time, the CIA as a defendant.

10.   On October 1, 2020, Defendants filed their Answer to the First Amended Complaint.

11.   On June 4, 2021, the CIA sent The Transparency Project an interim response letter to the two CIA Requests.  A true and correct copy of that letter is attached as **Exhibit E.**  The interim response letter was returned to the CIA as unclaimed.  A true and correct copy of that record is attached as **Exhibit F.**

12.   On July 13, 2021, the CIA sent The Transparency Project a final response letter to the two CIA Requests ("CIA Final Response Letter").  A true and correct copy of the CIA Final Response Letter is attached as **Exhibit G.**  As stated in the CIA Final Response Letter, the Agency withheld six documents in full in response to parts 3(1) and 3(2) of the May 2020 CIA Request.  The CIA cited Exemptions (b)(1), (b)(3), (b)(5), and (b)(6) as the basis for the withholdings.

13.  As further stated in the CIA Final Response Letter, the Agency also released in part four documents and withheld in full 157 documents responsive to part 2 of the June 2020 CIA Request.  The CIA cited Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) as the basis for the withholdings.  The CIA's Final Response Letter should have also cited Exemption (b)(7)(D).

14.  As further stated in the CIA Final Response Letter, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to all other parts of the May 2020 CIA Request and the June 2020 CIA Request.  This Response is commonly referred to as a Glomar response.[3]  The CIA offered a Glomar response to Parts 1, 2, 3(3), 4, 5, 6, 7, and 8 of the May 2020 CIA Request, and Part 1 of the June 2020 CIA Request.

## III. **CIA'S GLOMAR RESPONSE**

15.  The CIA offered a Glomar response to most portions of The Transparency Project's requests because acknowledging the existence or nonexistence of records responsive to those portions would reveal classified or statutorily-protected

---

[3]  The origins of the Glomar response date back to the D.C. Circuit's decision in Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976), which affirmed the CIA's use of the "neither confirm nor deny" response to a FOIA request for records concerning the CIA's reported contacts with the media regarding Howard Hughes' ship, the Hughes' Glomar Explorer.

information within the meaning of FOIA Exemptions (b)(1) and (b)(3).

A.  **Exemption (b)(1)**

16.  Exemption (b)(1) provides that FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  Consistent with sections 1.1(a) and 3.6(a) of Executive Order 13526,[4] I have determined that the fact of the existence or nonexistence or the requested records is currently and properly classified and pertains to "intelligence activities (including covert action), [or] intelligence sources or methods" within the meaning of section 1.4(c) of the Executive Order.

17.  Consistent with Section 1.7 of Executive Order 13526, my determination that the existence or nonexistence of the requested records is classified has not been made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to

---

[4]  Section 1.1(a) sets forth the procedural standards for classification, which have been satisfied in this case.  Section 3.6(a) provides that "[a]n agency may refuse to confirm or deny the existence or nonexistence or requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors."

restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.

18.   In most cases, upon receipt of a FOIA request, a federal agency will conduct searches for any responsive documents in their holdings and provide the requester with all segregable, non-exempt information contained in those records. In those instances, the fact that records responsive to a given request exist is not itself classified or otherwise exempt. However, in cases such as this one, where a confirmation or denial would itself reveal a classified fact, the Agency routinely asserts a Glomar response in order to protect that fact from disclosure.  Given the CIA's mandate to collect and analyze foreign intelligence and to conduct counterintelligence, there are many times when the Agency cannot reveal whether or not it possesses records on a particular subject.  This is especially the case when substantively responding to a request would tend to show a particular intelligence activity or otherwise reveal previously undisclosed information about CIA sources, capabilities, authorities, interests, relationships with domestic or foreign entities, strengths, weaknesses, and/or resources.  Accordingly, in order to maintain the effectiveness of the Glomar response, the CIA invokes the response consistently, even where the nonexistence of records appears to

be of little consequence.  If the Agency answered with a Glomar response only in instances where it possesses responsive records, that response could have the effect of confirming the existence of classified information.

19.  I have determined that confirming or denying the existence of a responsive record in this particular case, as to certain portions of the plaintiff's requests, could reasonably be expected to cause damage to national security by disclosing intelligence activities, sources, and methods.  There has been no official acknowledgment by the CIA on the topics in the portions of the May 2020 CIA Request or the June 2020 CIA Request for which the CIA offers a Glomar response.  Disclosing whether or not the CIA possesses the types of information requested in these portions of the requests would provide the CIA's adversaries with details into the Agency's priorities and capabilities, which in turn would impact the CIA's ability to utilize intelligence activities, sources, and methods in the interest of national security.

20.  For example, part 2 of the May 2020 CIA Request seeks "evidence indicating whether the 2016 Data Breach was the result of (1) outside forces (*e.g.*, Russian agents, Pakistani agents, etc.) who hacked the servers from a remote location or (2) an individual or individuals who were present at or inside DNC facilities and copied the data onto a storage device."  If the

11

CIA were to confirm the existence of records responsive to this item in the request, such confirmation would show that the Agency devoted resources to this subject, and determined the cause of the 2016 data breach. Conversely, if the CIA denied possessing records containing such an assessment, that response would show that the Agency did not determine the cause or did not consider the subject to be of sufficient intelligence interest to warrant analysis or assessment. In either case, disclosing whether or not the CIA possesses responsive records would reveal which topics are the subjects of CIA analysis and study. Such a disclosure would reveal aspects of the Agency's intelligence collection, which itself constitutes an intelligence method.

21. As another example, parts 4-8 of the May 2020 CIA Request seek records reflecting CIA plans or efforts with journalists, U.S. social media companies, U.S. search engine companies, and entertainment productions. If the CIA were to confirm the existence of responsive records to any of these parts of the request, such confirmation would disclose Agency intelligence activities, sources, and methods. Conversely, if the CIA denied possessing any responsive records, that response would disclose, for example, that the CIA does not have contact with those types of entities. Disclosing this type of information would provide our adversaries with insight into the

Agency's sources, relationships, priorities, and capabilities. They could exploit this information by using it to determine how to operate against our national security.

22.   Additionally, part 1 of the June 2020 CIA Request seeks records "reflecting or pertaining to surveillance of Edward Butowsky of Texas or Matt Couch of Arkansas."  A primary function of the CIA is to gather intelligence from around the world that can be used by the President and other Government officials in making important decisions.  To fulfill this responsibility, the Agency targets certain individuals as part of its foreign intelligence collection efforts.  Revealing the identity of a potential foreign intelligence target of collection could cause the exposure of Agency tradecraft, human sources, and specific intelligence interests and activities.  As such, confirming or denying the existence of records on any particular individual reasonably could be expected to cause serious damage to national security by indicating whether or not CIA maintained any human intelligence sources related to an interest in the subject of the request.

23.   In order to avoid the potential for such damage to national security, and to be credible and effective, the CIA must offer a Glomar response consistently in cases in which the request is for records on a particular individual with whom the CIA does not have an unclassified affiliation.  This approach is

13

necessary in all cases where the existence or nonexistence of records responsive to a FOIA request is a classified fact, including instances in which the CIA does not possess records responsive to a particular request.  Otherwise, if the CIA were to assert a Glomar response only in cases where responsive records exist, over time the Glomar response would serve to identify the particular cases in which the CIA has an intelligence interest in the subject.  As a result, the CIA could not effectively offer a Glomar response in other cases seeking records on other individuals where the CIA does have a classified interest, including requests seeking information about intelligence sources and targets.  This would hinder the CIA's ability to fulfill its intelligence-gathering responsibilities, which reasonably could be expected to cause damage to national security.

24.  For these reasons, I have determined that confirming the existence or nonexistence of records responsive to parts 1, 2, 3(3), 4, 5, 6, 7, and 8 of the May 2020 CIA Request, and part 1 of the June 2020 CIA Request reasonably could be expected to cause damage to national security, and are therefore currently and properly classified facts exempt from disclosure pursuant to Exemption (b)(1).

**B.**   **Exemption (b)(3)**

25.   Exemption (b)(3) protects information that is specifically exempted from disclosure by statute.  A withholding statute under Exemption (b)(3) must: (A) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establish particular criteria for withholding or refer to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

26.   Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024 (the "National Security Act"), provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024.  Accordingly, the National Security Act constitutes a statute which "requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3).  Under the direction of the DNI pursuant to section 102A, and consistent with section 1.6(d) of Executive Order 12333, the CIA is authorized to protect CIA sources and methods from unauthorized disclosure.[5]

---

[5]  Section 1.6(d) of Executive Order 12333, as amended, 3 C.F.R. 200 (1981), *reprinted in* 50 U.S.C. § 3001 note at 25 (formerly codified at 50 U.S.C.A. § 401 note at 25 (West Supp. 2009)), and as amended by Executive Order 13470, 73 Fed. Reg. 45,323 (July 30, 2008), requires the Director of the CIA to "[p]rotect intelligence and intelligence sources, methods, and activities

27.   As discussed above in regards to the application of
Exemption (b)(1), acknowledging the existence or nonexistence of
records responsive to parts 1, 2, 3(3), 4, 5, 6, 7, and 8 of the
May 2020 CIA Request, and part 1 of the June 2020 CIA Request,
would reveal intelligence sources and methods, which the
National Security Act is designed to protect.  Accordingly, the
fact of the existence or nonexistence of responsive records is
exempt from disclosure under Exemption (b)(3) pursuant to the
National Security Act.  The CIA's Glomar response to the above-
mentioned parts of The Transparency Project's FOIA requests is
also grounded in the National Security Act's protection for
intelligence sources and methods.  As a result, exemptions
(b)(1) and (b)(3) thus apply independently and co-extensively to
those parts of the requests.

28.   In contrast to Executive Order 13526, Exemption (b)(3)
does not require the CIA to identify and describe the damage to
national security that reasonably could be expected to result
from confirmation of the existence or nonexistence of the
records requested.  Nonetheless, I refer the Court to the
discussion above for a description of the damage to the national
security that is reasonably likely to ensue should anything
other than a Glomar response be provided by the CIA.

---

from unauthorized disclosure in accordance with guidance from
the [DNI]."

## IV.   SEARCHES FOR RESPONSIVE RECORDS

29.   The CIA processed documents in response to parts 3(1) and 3(2) of the May 2020 CIA Request.  These requests relate to the task force / working group convened by former CIA Director John Brennan.  In particular, parts 3(1) and 3(2) request records that the CIA "(1) identify the name and agency affiliation of each member of the task force / working group as well as (2) the dates that each such person began and ceased working with the group."  The CIA also processed documents in response to part 2 of the June 2020 CIA Request, which requested records "pertaining to whether former Central Intelligence Agency Director David Petraeus mishandled classified information or sold such information during his tenure as CIA director."

30.   In response to these parts of the requests, CIA conducted broad searches designed to uncover any responsive documents located across the Agency.  The CIA first identified the offices that were most likely to maintain responsive materials.  These were the Office of the Director, the Office of Congressional Affairs, the Office of the Inspector General (OIG), the Office of General Counsel, and the Office of Security.

31.   Agency professionals conducted searches spanning the pertinent time frame for each of these two requests.  These searches included emails, internal share drives, relevant

databases, and paper files.  Additionally, search personnel also queried CADRE, the Agency's repository for records that have been previously disclosed to the public.

32.  As a result of these searches, the CIA identified six records responsive to parts 3(1) and 3(2) of the May 2020 CIA Request.  The CIA withheld all six of these records in their entirety.  In addition, the CIA identified 161 records responsive to part 2 of the June 2020 CIA Request.  Of this number, the CIA withheld 157 records in their entirety, and released four in part.  The justification for withholding these records in their entirety or in part is described in the next section of this declaration, and is also documented in the accompanying *Vaughn* Index.

## V.   FOIA EXEMPTIONS APPLIED

### A.   Exemption (b)(1)

33.  As an original classification authority, I have determined that each of the records responsive to parts 3(1) and 3(2) of the May 2020 CIA Request, and part 2 of the June 2020 CIA Request are currently and properly classified, or contain information that is currently and properly classified.  I have further determined that the classified information in these records is appropriately withheld from disclosure pursuant to Exemption (b)(1).  Specifically, the classified information is owned by and is under the control of the U.S. Government.  The

information falls under classification category § 1.4(c) of the Executive Order because it concerns "intelligence activities (including cover action), [or] intelligence sources and methods." Further, its unauthorized disclosure could reasonably be expected to result in damage to national security. In addition, in accordance with § 1.8(a) of the Order, none of the information at issue has been classified in order to conceal violations of law, inefficiency or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interest of national security. Furthermore, the responsive records that contain CIA classified information are properly marked in accordance with § 1.6 of the Executive Order.

34. Here, the information withheld pursuant to Exemption (b)(1) consists of (i) identifying information regarding covert personnel; (ii) identifying information regarding covert locations; and (iii) information that would tend to reveal specific intelligence sources, methods, and or activities.

35. *Covert Personnel*. The CIA considers the identities of its covert employees and their activities to constitute intelligence sources and methods. In order to carry out its mission of gathering and disseminating intelligence, the CIA places certain employees under cover to protect the fact,

19

nature, and details of the Agency's interest in foreign activities as well as the intelligence sources and methods employed to assist in those activities.  Disclosing the identity of a covert employee could expose the intelligence activities with which the employee has been involved and the sources with whom the employee has had contact.  Additionally, disclosing the identity of a covert employee could jeopardize the safety of the employee, his or her family, his or her sources, and even other persons with whom he or she has had contact.  In order for the Agency to carry out effectively its foreign-intelligence gathering mission, it is imperative that the identities of these covert personnel be protected.

36.  *Covert Locations.*  The records at issue also contain details related to covert CIA locations.  The places where the CIA maintains a presence constitute classified intelligence methods of the Agency.  The CIA's covert overseas facilities are critical to the CIA's mission, as they provide a base for the CIA's foreign intelligence activities.  Acknowledging the location of such covert facilities can endanger the physical safety of covert CIA officers who work at those locations by, among other things, significantly increasing the likelihood that those facilities could be targeted for attacks.

37. *Intelligence Methods and Activities*.  The documents at issue also contain information concerning CIA intelligence methods as well as details of specific intelligence activities.

38. The CIA must guard against the disclosure of the clandestine methods it uses to collect and analyze intelligence. Intelligence methods are the techniques and means by which an intelligence agency accomplishes the mission, and the classified internal regulations, approvals, and authorities that govern the conduct of CIA personnel.  In this case, the CIA withheld information related to the methods that it uses to collect and analyze intelligence. This includes certain classified details regarding the Agency's information technology and security of those systems.

39. The manner in which the Agency protects its intelligence on its information systems is itself a method— indeed, one that is critical to the CIA's mission of collecting and analyzing foreign intelligence.  Disclosure of different details regarding the Agency's information technology and information security may complicate or completely disrupt CIA communications.  For example, a disruption to the Agency's computer network could hinder active operations or allow for the interception of classified communications by adversaries.  The Agency must protect identifying information regarding its information systems, its information security protocols, and

details regarding its technical capabilities concerning this information systems from disclosure.  The Agency must do so in order to prevent adversaries, terrorist organizations, and others from learning about how the CIA operates, which would allow them to use countermeasures to undermine U.S. intelligence capabilities and render collection efforts ineffective.

40.  For all of these reasons, the CIA cannot disclose these types of details in the responsive records insofar as they would disclose intelligence sources, methods, and activities.  I have determined that this information remains currently and properly classified pursuant to the criteria of Executive Order 13526 as its disclosure could reasonably be expected to cause damage to national security.

B.   **Exemption (b)(3)**

41.  As discussed in Part III.B, Exemption (b)(3) protects information that is specifically exempted from disclosure by statute.  Section 102A(i)(1) of the National Security Act,[6] and Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (the "CIA Act") constitute withholding statutes in accordance with Exemption (b)(3).  Both have been

---

[6]  Background information on the National Security Act is provided in Part III.B.

widely recognized as such, and both apply here to protect certain information in the records from disclosure.

### National Security Act

42.    In conjunction with the National Security Act, Exemption (b)(3) applies co-extensively to all the information protected by Exemption (b)(1) because the information would reveal specific intelligence sources and methods.  Additionally, there are some aspects of the Agency's intelligence sources and method that are unclassified, but would nevertheless reveal intelligence sources and methods protected by the National Security Act if disclosed.  This includes some details related to the Agency's information technology systems.  This information would show the types of equipment relied upon by Agency personnel to carry out the CIA's objectives.  The National Security Act applies to protect this information.

43.    The National Security Act also applies here to protect under Exemption (b)(3) two additional categories of information: (i) classification and dissemination control markings, and (ii) code words and pseudonyms.

44.    *Classification and Dissemination Control Markings.* The records at issue contain classification and dissemination-control markings, which are among the intelligence methods used to control the dissemination of intelligence-related information and to protect such information from unauthorized disclosure.

These markings indicate the overall classification level as well as the classification of discrete portions of a document, the presence of any compartmented information, and the limits on disseminating the information.  The markings reveal details about the sensitivity and content of the underlying intelligence and indicate restrictions on access or handling.  Disclosure of these markings would reveal or highlight areas of particular intelligence interest, sensitive collection sources or methods, foreign sensitivities, and procedures for gathering, protecting, and processing intelligence.

45.  *Code Words and Pseudonyms*.  Some of the records at issue contain code words and pseudonyms.  The use of code words is an intelligence method whereby words and letter codes are substituted for actual names, identities, or programs in order to afford additional protection to intelligence sources and other intelligence methods.  Specifically, the CIA and other federal agencies use code words in cables and other correspondence to disguise the true name of a person or entity of operational intelligence interest, such as a source, a foreign liaison service, or a covert program.  The CIA also uses pseudonyms, which are essentially code names, in many of its internal communications.

46.  When obtained and matched to other information, code words and pseudonyms possess a great deal of intelligence value

to someone able to fit them into the proper framework.  For example, the reader of a message is better able to assess the nature of a piece of intelligence if the reader can identify a location, an undercover employee, an intelligence activity, or a foreign activity by the code word or pseudonym.  By using these code words, the CIA and other federal agencies add an extra measure of security, minimizing the damage that would flow from an unauthorized disclosure of intelligence information.  The disclosure of code words and pseudonyms—especially in context, or in the aggregate—can permit foreign intelligence services and other adversaries to fit disparate pieces of information together and to discern or deduce the identity or nature of the person or project for which the code word or pseudonym stands.

47.  Although no harm rationale is required under Exemption (b)(3), for the reasons discussed in this section, the release of the information withheld under Exemption (b)(3) pursuant to the National Security Act could result in harm by significantly impairing the CIA's ability to carry out its core missions of gathering and analyzing foreign intelligence.

Central Intelligence Act

48.  Section 6 of the CIA Act protects "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency" from disclosure. 50 U.S.C. § 3507.  The CIA Act therefore constitutes a federal statute that

"establishes particular criteria for withholding or refers to particular matters to be withheld." 5 U.S.C. § 552(b)(3). The CIA Act applies to protect the listed information of both CIA officers and contractors.

49. Pursuant to the CIA Act, here, the Agency withheld names and other personally-identifying information of Agency personnel, such as Agency identification numbers, telephone numbers, email addresses, locations, and core job functions. This is precisely the type of identifying information the CIA Act protects against disclosure. Although no harm rationale is required, disclosure of the information withheld would expose the identities of CIA personnel, and possibly their job duties and contact information, which could subject them to harassment, embarrassment, or unwanted contact. Disclosure would also highlight the capabilities and possible limitations of the Agency's intelligence activities, which could hinder the Agency's efforts to fulfill its intelligence-gathering mission.

## C.   Exemption (b)(5)

50. Exemption (b)(5) provides that the FOIA's disclosure requirements do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As a preliminary matter, the CIA Final Response Letter indicated that the CIA withheld information

under Exemption (b)(5) in the documents responsive to parts 3(1)
and 3(2) of the May 2020 CIA Request, and part 2 of the June
2020 CIA Request.  The CIA is no longer asserting Exemption
(b)(5) in relation to the documents responsive to parts 3(1) and
(3)(2) of the May 2020 CIA Request.  This does not alter the
fact that each of the documents responsive to that request were
properly withheld in full pursuant to other FOIA exemptions as
addressed in this declaration.

51.   The CIA continues to assert Exemption (b)(5) in
relation to the documents responsive to part 2 of the June 2020
CIA request.  All of the information that the Agency withheld
under Exemption (b)(5) has been circulated either within the
Agency or with other agencies within the federal government, and
therefore satisfies the intra- and inter-agency threshold of the
exemption.  As described in the CIA's *Vaughn* Index, the
information for which Exemption (b)(5) was asserted applies to
discussions that are protected by the deliberative process
privilege, the attorney work-product privilege, or the attorney-
client privilege.

Deliberative Process Privilege

52.   The deliberative process privilege protects Agency
communications that are pre-decisional and deliberative.  The
purpose of the privilege is to prevent injury to the quality of
agency decision-making.  The privilege cannot be invoked as a

27

basis for withholding information under Exemption (b)(5) if the records at issue were created 25 years or more before the date of the request.  5 U.S.C. § 552(b)(5).

53.  The CIA invoked the deliberative process privilege here for the majority of the records responsive to part 2 of the June 2020 CIA Request, which is the request for records concerning whether former CIA Director Petraeus mishandled classified information.  As a preliminary matter, none of the records at issue were created 25 years or more before the date of the request.  Further, as noted in the *Vaughn* Index, many of the records consist of OIG investigation case progress reviews, logs of investigative activity, correspondence with DOJ regarding deliberations at different stages of the investigation, and witness interview notes.  Each of these communications reflect the CIA's internal and confidential decision-making process at interim stages of the investigation related to former CIA Director Petraeus.  Some of the documents withheld are draft versions, which were not finalized, contain no date, or have no signature.  Also, some of these drafts have embedded comments, or contain recommendations and edits as well as discussions about wording, accuracy, and other deliberative ancillary matters.  These communications do not convey final Agency viewpoints on a particular matter, but rather reflect different considerations, opinions, options, and approaches that

preceded the Department of Justice's final decision to pursue prosecution.

54.   The Agency invoked the deliberative process privilege to protect certain investigatory documents compiled by the CIA's OIG.  The documents include case reviews and updates, interview notes, and internal communications.  The documents reflect the status and direction of the investigation at a given point in time, which was subject to change as new information was acquired.  For example, as investigators conducted interviews, the information offered by those interviewed provided new leads that changed or expanded the scope of the investigation, prompted investigators to focus on certain individuals, or conversely, foreclosed other avenues of inquiry.  Similarly, the types of records collected and questions posed by the investigators reveal their thought processes by showing precisely what information they considered during the course of the investigation.  As a result, the documents withheld in full or in part pursuant to the deliberative process privilege do not reveal a final decision, but reflect the investigative, deliberative process that the Agency undertook.  If one compared the information gathered during the investigation (documented in the withheld records) against the publicly-filed documents related to this investigation (such as the signed plea agreement), it would permit one to determine which details

29

investigators did not consider significant or what weight they accorded certain sources.  It would also reveal that some of the information compiled was not utilized or selected for inclusion in the final analysis, which ultimately would open the Agency's deliberative process to public scrutiny on decisions that were not final.  This, in turn, would chill the free flow of discussion in agency decision-making.

55.  Furthermore, I am familiar with all of the documents withheld in full and in part pursuant to the deliberative process privilege.  I have determined that, to the extent the documents contain any factual material, that content is part and parcel of the deliberations, and its disclosure would expose or cause harm to the Agency's deliberations.  The disclosure of facts in these documents would reveal the nature of the preliminary recommendations and opinions preceding the final determinations.  In the case of draft documents, disclosure of these records would allow for the comparison between the wording in the final version and the drafts thereby revealing what information was considered significant or was discarded in the course of the drafting process.  Disclosure of any of these documents would inhibit the frank communications and free exchange of ideas that the privilege is designed to protect.  If the withheld information were released, CIA employees may hesitate to offer their candid opinions to superiors or

coworkers, and such self-censorship would tend to degrade the quality of Agency decisions.  Additionally, revealing this information could mislead or confuse the public by disclosing rationales that did not form the basis for the Agency's final decisions.

Attorney Work-Product Privilege

56.  Additionally, the Agency asserted the attorney work-product privilege to protect eight documents under Exemption (b)(5).  The privilege was invoked to withhold communications from or between Agency attorneys discussing the then-ongoing investigation, legal issues, and deliberations regarding the future progression of the investigation.  All of the communications withheld as attorney work product were created in reasonable anticipation of litigation; namely, a criminal prosecution.  If this information were to be released, it would expose the various attorneys' work to scrutiny and reveal preliminary litigation risk analysis and strategy.  This is the type of information that the attorney work-product privilege is designed to protect.

Attorney-Client Privilege

57.  The attorney-client privilege protects confidential communications between an attorney and his or her client relating to a legal matter for which the client has sought professional advice.  In this case, the Agency asserted the

attorney-client privilege in regards to one document to protect confidential communications between senior Agency officials and senior attorneys within the CIA's Office of General Counsel.   In the one document at issue, an Agency official requested legal advice related to information concerning the FBI investigation and a certain proposed course of action.   The confidential communications consist of factual information supplied by the client in connection with the request for legal advice, as well as discussions between attorneys that reflect those facts, and legal analysis and advice provided to the client.   The confidentiality of these communications was maintained.   If this confidential information were to be disclosed, it would subject the legal guidance to scrutiny and reveal preliminary legal risk analysis and strategy.   This is the type of information that the attorney-client privilege is designed to protect.

### D.    **Exemption (b)(6)**

58.   Exemption 6 provides that the FOIA's information release requirements do not apply to "personnel and medical files and similar files, the disclosure of which could constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).   The term "similar files" covers any personally identifying information of covert and overt CIA personnel and other individuals mentioned in the documents, such as names, positions, contact information, social security

numbers, unique Agency identifiers (such as pseudonyms and Agency identification numbers), and similar identifying details.

59.   In applying Exemption (b)(6), an agency is required to balance the relevant privacy interests of the individuals against the public interest in disclosure, and determine that the disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(6). The public interest in the FOIA context is defined as information that would shed light on the performance of the Agency's statutory duties.

60.   In response to the parts of the May 2020 CIA Request and the June 2020 CIA Request that the Agency processed, the Agency withheld identifying information of the individuals involved in the topics at issue.  The individuals named in the records are CIA employees, non-agency government personnel, and other third parties unaffiliated with the Agency.  These persons maintain a strong privacy interest in this information because its release could subject them to harassment, embarrassment, or unwanted contact by virtue of their association with the subject matters of the FOIA requests.

61.   Conversely, The Transparency Project has not set forth, and I am unable to identify in each of these instances, any qualifying countervailing public interest that would be served by such a disclosure.  The release of the withheld

identifying information also would not serve the core purpose of FOIA—informing the public as to the operations or activities of the government.  Because there is no qualifying public interest in disclosure, I have determined that the release of this information would constitute a clearly unwarranted invasion of the personal privacy of these individuals.  In addition, to the extent the identifying information is that of Agency personnel, the protections of Exemption (b)(3) also apply in conjunction with the CIA Act.

**E.    Exemption (b)(7)**

62.   Certain records and information generated by the CIA's OIG were "compiled for law enforcement purposes" within the meaning of Exemption (b)(7).  Exemption (b)(7) protects from disclosure, in relevant part:

> Records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institute which furnished information on a confidential basis and, in the case of a record or information compiled by a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, [or] (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

5 U.S.C. § 552(b)(7).

63. The OIG is charged with providing objective and independent oversight into the programs and operations of the CIA. On November 13, 2012, the OIG opened an investigation into activities involving former CIA Director Petraeus. After the FBI took over the investigation, the OIG then continued to provide assistance in the investigation. The CIA has asserted Exemptions (b)(7)(C) and (b)(7)(D) to protect the privacy of those involved in the investigation and information provided by confidential sources to the OIG during the course of its investigation.

<u>Exemption (b)(7)(C)</u>

64. The CIA invoked Exemption (b)(7)(C) here to withhold identifying information regarding the individuals involved in the investigation. The Agency also asserted Exemption (b)(6) for the same personally-identifying information. As with Exemption (b)(6), the Agency withheld the names of CIA employees and other federal government personnel pursuant to Exemption (b)(7)(C) because these persons maintain a strong privacy interest. Release of identifying details in connection with this matter could subject them to harassment, embarrassment, or unwanted contact by media or other interested parties, and I am unable to identify any countervailing public interest in revealing the names of these individuals. Accordingly, I have

determined that disclosure of this information could reasonably be expected to constitute an unwarranted invasion of personal privacy pursuant to Exemption (b)(7)(C).

Exemption (b)(7)(D)

65.   As a matter of Agency policy, the OIG does not disclose the identities of persons it interviews or the substance of their statements unless such disclosure is determined to be necessary for the full reporting of a matter or the fulfillment of other OIG or Agency responsibilities. Pursuant to Agency policy, all interviewees here were under an express or implied promise of confidentiality.   The OIG shared this information to the extent necessary for law enforcement purposes.   The CIA has asserted Exemption (b)(7)(D) to protect the interview notes of OIG investigators and memoranda drafted from those notes.   The notes contain details that would tend to identify the individuals interviewed by revealing their position in the Agency or their role in, or knowledge of, the underlying events.   The performance of the OIG's mission to conduct independent investigations is heavily reliant upon its access to unfiltered information provided by confidential sources. Disclosure of the sources and the information that they provide would severely compromise the OIG's ability to perform those duties.   Because this investigation was criminal in nature, all information provided by these confidential sources is protected

by Exemption (b)(7)(D).  As such, no part of the interview notes or the memoranda is segregable.

Exemption (b)(7)(E)

66.  The OIG relies upon certain investigative techniques in order to fulfill its mission of providing objective and independent oversight into the programs and operations of the CIA.  The Agency invoked Exemption (b)(7)(E) in this case to protect information related to some of the techniques and procedures used by the OIG in relation to the OIG's investigation into former CIA Director Petraeus.  If disclosed, this information would reveal the extent to which the OIG records, catalogs, or otherwise compiles specific information as part of its investigations.  This information, if made available, could be used to try to circumvent those techniques and procedures, or neutralize their effectiveness, in association with attempts by others to evade detection in the future.  For the limited amount of information for which the CIA asserted Exemption (b)(7)(E), the CIA also asserted Exemption (b)(3) under the National Security Act.  The techniques and procedures employed by the OIG to conduct its investigations also constitute intelligence methods protected from disclosure under the National Security Act.

## VI.   **SEGREGABILITY**

67.   In evaluating the documents responsive to parts 3(1)
and 3(2) of the May 2020 CIA Request, and part 2 of the June
2020 CIA Request, the CIA conducted a document-by-document and
line-by-line review and released all reasonably segregable, non-
exempt information that could be released without potentially
compromising classified or privilege information, or other
information protected by the FOIA.  Much of the information is
protected by several overlapping FOIA exemptions.  For example,
the interview notes and memoranda withheld under Exemption
(b)(5) pursuant to the deliberative process privilege contain
discrete pieces of classified information withheld pursuant to
Exemption (b)(1), and intelligence sources and methods withheld
under Exemption (b)(3) pursuant to the National Security Act.
They also contain the names of employees, withheld under
Exemption (b)(3) pursuant to the CIA Act, and Exemption (b)(6).
They further contain identifying information about those
involved in the investigation or information provided by
individuals interviewed, which is withheld under Exemptions
(b)(7)(C) and (b)(7)(D) respectively.  After reviewing all of
the records at issue, I have determined that no additional
information can be released from the documents without
jeopardizing classified or privileged material, individuals'

personal privacy, or other protected information that falls within the scope of one or more FOIA exemptions.

*   *   *

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __10th__ day of February 2022.


_____
Vanna Blaine
Information Review Officer
Litigation Information Review Office
Central Intelligence Agency

# EXHIBIT A

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 1 | 5/28/2020 | C06890218 | Internal Agency Emails Regarding Task Force. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, intelligence activites). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 9/27/2016 | 1 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |
| 2 | 5/28/2020 | C06890219 | Inter-Agency Emails Regarding Task Force. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, intelligence activites). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as TOP SECRET, and as such, disclosure of this information could be reasonably expected to result in exceptionally grave damage to national security. | 9/21/2016 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |
| 3 | 5/28/2020 | C06890220 | Internal Agency Email and Inter-Agency Email Regarding Task Force. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, intelligence activites). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as TOP SECRET, and as such, disclosure of this information could be reasonably expected to result in exceptionally grave damage to national security. | 9/20/2016 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |
| 4 | 5/28/2020 | C06890221 | Internal Agency Email Regarding Task Force. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, intelligence activites). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 10/4/2016 | 1 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |
| 5 | 5/28/2020 | C06890222 | Inter-Agency Email Regarding Task Force. Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers). Exemption (b)(3) (National Security Act) was invoked to protect unclassified intelligences sources and methods. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 10/18/2016 | 3 | DIF | (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 6 | 5/28/2020 | C06902368 | Internal Agency Document Regarding Task Force.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, intelligence activites).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, titles).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | Unknown | 1 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |
| 7 | 6/18/2020 | C06615167 | Internal Agency E-Mail Concerning Inventory.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation as well as attorney work product.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 3/13/2013 | 8 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 8 | 6/18/2020 | C06615172 | Internal Agency E-Mail Concerning Investigation with FBI.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (code names).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).   Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation as well as attorney work product.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 6/7/2013 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 9 | 6/18/2020 | C06615173 | Internal Agency E-Mail Concerning Request from FBI. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (code names). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation as well as attorney work product. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 7/26/2013 | 1 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 10 | 6/18/2020 | C06615195 | Internal Inter-Agency E-Mail Concerning Investigation. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (code names). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation as well as attorney work product. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 9/23/2013 | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 11 | 6/18/2020 | C06615196 | Internal Agency E-Mail Concerning Investigation. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (code names). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation as well as attorney work product. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/5/2013 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 12 | 6/18/2020 | C06615198 | Internal Agency E-Mail Concerning Investigation.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (code names).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 7/26/2013 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |
| 13 | 6/18/2020 | C06615199 | Internal Agency E-Mail with FBI.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (code names).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 7/8/2013 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |
| 14 | 6/18/2020 | C06615203 | Internal Inter-Agency E-Mail Concerning Investigation with FBI and DOJ. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (code names, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 2/5/2014 | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 15 | 6/18/2020 | C06615205 | Internal Agency E-Mail concerning Investigation with DOJ.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (intelligence activity and code names).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation as well as attorney work product.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 5/26/2015 | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 16 | 6/18/2020 | C06615206 | Internal Inter-Agency E-Mail concerning Investigation with DOJ. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert facilities, intelligence activites).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal informaiton of Agency personnel.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 2/12/2015 | 19 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6) |
| 17 | 6/18/2020 | C06615207 | Internal Agency E-Mail concerning Investigation.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert facilities, intelligence activites).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 2/12/2015 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6) |
| 18 | 6/18/2020 | C06615208 | Internal Agency E-Mail Concerning Request from DOJ.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, code names, covert locations).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation as well as attorney work product.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 5/14/2014 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 19 | 6/18/2020 | C06615210 | Internal Agency E-Mail Concerning Investigation with DOJ. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (intelligence activity). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers). Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation as well as attorney work product. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/15/2015 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 20 | 6/18/2020 | C06615213 | Internal Agency E-Mail Concerning Document Request. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, code names). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 2/9/2015 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 21 | 6/18/2020 | C06615216 | Internal Agency Forensic Report. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (phone numbers, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as TOP SECRET, and as such, disclosure of this information could be reasonably expected to result in exceptionally grave damage to national security. | 6/17/2012 | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, |
| 22 | 6/18/2020 | C06615220 | Internal OIG document related to investigation. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. Exemption (b)(7)(E) was asserted to protect investigation techniques and procedures used by the CIA Office of the Inspector General. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 12/14/2012 | 7 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6), (b)(7)(E) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 23 | 6/18/2020 | C06615222 | Internal OIG document related to investigation.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 12/14/2012 | 1 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |
| 24 | 6/18/2020 | C06615228 | Draft of internal general risk assessment.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (functions).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation related to mitigating certain risks.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as TOP SECRET, and as such, disclosure of this information could be reasonably expected to result in exceptionally grave damage to national security. | Unknown | 20 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5) |
| 25 | 6/18/2020 | C06615230 | Office of Inspector General (OIG) Investigation Staff Case Progress Review.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and telephone numbers).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in coordinating with the FBI's investigation.  Exemption (b)(6) was asserted to protect the names of Agency employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 3/20/2013 | 2 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C) |
| 26 | 6/18/2020 | C06615231 | OIG Case Progress Review.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert locations).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in assisting the FBI's investigation.  Exemption (b)(6) was asserted to protect the names of Agency employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 4/23/2013 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 27 | 6/18/2020 | C06615232 | Draft OIG Case Progress Review. Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to coordinating with FBI's investigation. Exemption (b)(6) was asserted to protect the names of Agency employees. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | Unknown | 2 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C) |
| 28 | 6/18/2020 | C06615236 | OIG Case Progress Review. Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and telephone numbers). Exemption (b)(5) was asserted to protect pre- decisional intra-agency deliberations related to next steps in assisting with the FBI's investigation. Exemption (b)(6) was asserted to protect the names of Agency employees. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 6/24/2014 | 2 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C) |
| 29 | 6/18/2020 | C06615241 | Internal OIG document related to investigation. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals related to FBI's investigation. Exemption (b)(7)(E) was asserted to protect investigation techniques and procedures used the CIA Office of the Inspector General. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/15/2012 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E) |
| 30 | 6/18/2020 | C06615243 | Memorandum of Investigative Activity/CIA Employee. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability, names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/14/2012 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 31 | 6/18/2020 | C06615246 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods and activities. Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/15/2012 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 32 | 6/18/2020 | C06615247 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods and activities. Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre- decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/14/2012 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 33 | 6/18/2020 | C06615248 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(5) was asserted to protect pre- decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/14/2012 | 2 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

**Central Intelligence Agency** *Vaughn* **Index**

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 34 | 6/18/2020 | C06615249 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods and activities.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, locations).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/14/2012 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 35 | 6/18/2020 | C06615250 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/14/2012 | 4 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 36 | 6/18/2020 | C06615251 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods and activities.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, locations).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/14/2012 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 37 | 6/18/2020 | C06615252 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (including covert personnel and covert locations).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, locations).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/15/2012 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 38 | 6/18/2020 | C06615253 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (including covert personnel and covert locations).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, locations).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/15/2012 | 7 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 39 | 6/18/2020 | C06615254 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, locations).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/15/2012 | 3 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 40 | 6/18/2020 | C06615255 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information identifying Agency information security protocols).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/16/2012 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 41 | 6/18/2020 | C06615256 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/16/2012 | 4 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 42 | 6/18/2020 | C06615260 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.   Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/16/2012 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 43 | 6/18/2020 | C06615262 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability and names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/16/2012 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 44 | 6/18/2020 | C06615263 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/17/2012 | 4 | DIF | (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 45 | 6/18/2020 | C06615266 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(5) was asserted to protect pre- decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names o Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/19/2012 | 4 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ
Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 46 | 6/18/2020 | C06615267 | Memorandum of Investigative Activity/CIA Employee. Exemption (b)(3)(CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(5) was asserted to protect pre- decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/19/2012 | 4 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 47 | 6/18/2020 | C06615268 | Memorandum of Investigative Activity/CIA Employee. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert locations, identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an expressed promise of confidentiality. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/19/2012 | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 48 | 6/18/2020 | C06615269 | Memorandum of Investigative Activity/CIA Employee. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information identifying Agency information Security protocols). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, locations). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an expressed promise of confidentiality. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/19/2012 | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 49 | 6/18/2020 | C06615270 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency information systems and names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/20/2012 | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 50 | 6/18/2020 | C06615271 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, core functions).   Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/20/2012 | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ
Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 51 | 6/18/2020 | C06615272 | Memorandum of Investigative Activity/CIA Employee. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency technical capability and names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/20/2012 | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 52 | 6/18/2020 | C06615273 | Memorandum of Investigative Activity/CIA Employee. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability and names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/20/2012 | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 53 | 6/18/2020 | C06615274 | Memorandum of Investigative Activity/CIA Employee. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information identifying Agency technical capabilities). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an expressed promise of confidentiality. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/20/2012 | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 54 | 6/18/2020 | C06615274 | Memorandum of Investigative Activity/CIA Employee. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability and names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Disclosure would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/20/2012 | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 55 | 6/18/2020 | C06615278 | OIG Memorandum of Investigative Activity. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods (intelligence activities). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(6) was asserted to protect the names of Agency and non-Agency federal employees. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals related to FBI's investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/29/2012 | 1 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

**Central Intelligence Agency *Vaughn* Index**

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 56 | 6/18/2020 | C06615279 | OIG Memorandum of Investigative Activity. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods (covert personnel, identifying information regarding Agency information systems, intelligence activities).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(6) was asserted to protect the names of Agency and non-Agency federal employees.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals related to FBI's investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/29/2012 | 15 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6), (b)(7)(D) |
| 57 | 6/18/2020 | C06615285 | OIG Memorandum of Investigative Activity. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods (covert personnel, identifying information regarding Agency information systems, intelligence activities).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(6) was asserted to protect the names of Agency and non-Agency federal employees.  Exemption (b)(7)(E) was asserted to protect investigation techniques and procedures used the CIA Office of the Inspector General.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 2/26/2013 | 45 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6), (b)(7)(E) |
| 58 | 6/18/2020 | C06615288 | OIG Memorandum of Investigative Activity.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods (names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and agency identification numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations regarding the investigation.  Disclosure of this document would reveal a specific issue OIG thought was important to the investigation as well as employees that may be interviewed.  Exemption (b)(6) was asserted to protect the names of Agency and non-Agency federal employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency and non-Agency federal employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 3/13/2013 | 2 | DIF | (b)(1), (b)(3)CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 59 | 6/18/2020 | C06615291 | OIG Memorandum of Investigative Activity. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods (intelligence activities). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation. Exemption (b)(6) was asserted to protect the names of Agency employees. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals related to FBI's investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 3/19/2013 | 16 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(D) |
| 60 | 6/18/2020 | C06615296 | OIG Memorandum of Investigative Activity. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods (covert personnel, intelligence activities). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in the investigation. Exemption (b)(6) was asserted to protect the names of Agency employees. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals related to FBI's investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 4/16/2013 | 8 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(D) |
| 61 | 6/18/2020 | C06615323 | Internal Agency E-Mails. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (intelligence activites, identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 2/4/2013 | 14 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 62 | 6/18/2020 | C06615333 | Internal Agency E-Mails.  Exemption (b)(1) and b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/29/2013 | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6) |
| 63 | 6/18/2020 | C06615336 | Two Internal Agency E-Mails Concerning Invoices/Documents.  Exemptions (b)(1) and b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and agency identification numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in providing assistance to the FBI's investigation.  Exemption (b)(6) was asserted to protect the names of Agency employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 12/17/2012, 11/26/2012 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 64 | 6/18/2020 | C06615338 | Two Internal Agency E-Mails Concerning Work Request/Completed. Exemption (b)(1) and b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and agency identification numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in providing assistance to the FBI's investigation.  Exemption (b)(6) was asserted to protect the names of Agency employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/31/2013 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 65 | 6/18/2020 | C06615348 | Internal Agency E-Mails.  Exemption (b)(1) and b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/13/2012 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 66 | 6/18/2020 | C06615349 | Internal Agency E-Mails. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as TOP SECRET, and as such, disclosure of this information could be reasonably expected to result in exceptionally grave damage to national security. | 11/5/2012 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |
| 67 | 6/18/2020 | C06615353 | Internal Agency E-Mail Concerning Setting up computer with virus scan. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and phone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related next steps in the investigation. Exemption (b)(6) was asserted to protect the names of Agency employees. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/29/2013 | 16 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 68 | 6/18/2020 | C06615356 | Internal Agency E-Mail Concerning Computer. Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and phone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. Exemption (b)(6) was asserted to protect the names of Agency employees. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 1/29/2013 | 2 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C) |
| 69 | 6/18/2020 | C06615357 | Internal Agency E-Mails. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/29/2013 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 70 | 6/18/2020 | C06615361 | Internal Agency E-Mail Concerning Computer.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency information systems and covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Exemption (b)(6) was asserted to protect the names of Agency employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/30/2013 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 71 | 6/18/2020 | C06615367 | Three Internal Agency E-Mails Concerning Computer.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information and security protocols regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/13/2012 | 10 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 72 | 6/18/2020 | C06615375 | Internal Agency E-Mail Concerning Computer. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency systems and covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, agency identification numbers and phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre decisional intra-agency deliberations related to assistance with FBI's investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 3/10/2014 | 15 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 73 | 6/18/2020 | C06637386 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency information systems and names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 10/5/2012 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 74 | 6/18/2020 | C06637387 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency information systems, programs and names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/20/2012 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 75 | 6/18/2020 | C06637388 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency information systems information security, programs and names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | Unknown | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 76 | 6/18/2020 | C06637389 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency technical capability and names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/20/2012 | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ
Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 77 | 6/18/2020 | C06637390 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency technical capability and names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | Unknown | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 78 | 6/18/2020 | C06637391 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency technical capability). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/28/2013 | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ
Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 79 | 6/18/2020 | C06637392 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency technical capability). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | Unknown | 2 | DIF | (b)(1), (b)(3) CIA Act , (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 80 | 6/18/2020 | C06637393 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/29/2013 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 81 | 6/18/2020 | C06637394 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/30/2013 | 1 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 82 | 6/18/2020 | C06637395 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | Unknown | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 83 | 6/18/2020 | C06637396 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency technical capability).  Exemption (b)(3) (CIA Act)  was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations relate to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/20/2012 | 8 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 84 | 6/18/2020 | C06637397 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (identifying information regarding Agency technical capability).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/30/2013 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

**Central Intelligence Agency *Vaughn* Index**

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 85 | 6/18/2020 | C06637398 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability and names of ).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/20/2012 | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 86 | 6/18/2020 | C06637399 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability and names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | Unknown | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 87 | 6/18/2020 | C06637400 | Internal Investigative Handwritten Notes.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, an  information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/14/2012 | 3 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 88 | 6/18/2020 | C06637401 | Internal Investigative Handwritten Notes. Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/15/2012 | 3 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 89 | 6/18/2020 | C06637402 | Internal Investigative Handwritten Notes. Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/15/2012 | 3 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 90 | 6/18/2020 | C06637403 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/14/2012 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 91 | 6/18/2020 | C06637404 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was asserted to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/15/2012 | 1 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 92 | 6/18/2020 | C06637405 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/28/2013 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 93 | 6/18/2020 | C06637406 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (intelligence activity and names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/13/2012 | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 94 | 6/18/2020 | C06637407 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (names of covert personnel and information regarding Agency technical capability).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) as asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/14/2012 | 4 | DIF | (b)(1), (b)(3) CIA Act , (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 95 | 6/18/2020 | C06637408 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/15/2012 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 96 | 6/18/2020 | C06637409 | Internal Investigative Handwritten Notes.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/14/2012 | 2 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 97 | 6/18/2020 | C06637410 | Internal Investigative Handwritten Notes.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/15/2012 | 6 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 98 | 6/18/2020 | C06637411 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/15/2012 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 99 | 6/18/2020 | C06637412 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 11/14/2012 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 100 | 6/18/2020 | C06637413 | Internal Investigative Handwritten Notes.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | Unknown | 4 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 101 | 6/18/2020 | C06637414 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | Unknown | 15 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 102 | 6/18/2020 | C06637415 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/30/2013 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 103 | 6/18/2020 | C06637416 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O.13526 and reflects intelligence sources and methods (identifying information regarding Agency information systems and names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/30/2013 | 7 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 104 | 6/18/2020 | C06637417 | Internal Investigative Handwritten Notes.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/19/2012 | 2 | DIF | (b)(3) CIA Act , (b)(5), (b)(6), (b)(7)(C), b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ
Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 105 | 6/18/2020 | C06637418 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O.13526 and reflects intelligence sources and methods (names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/19/2012 | 10 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 106 | 6/18/2020 | C06637419 | Internal Investigative Handwritten Notes. Memorandum of Investigative Activity/CIA Employee. Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/19/2012 | 5 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 107 | 6/18/2020 | C06637420 | Internal Investigative Handwritten Notes. Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | Unknown | 3 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 108 | 6/18/2020 | C06637421 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O.13526 and reflects intelligence sources and methods (names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | Unknown | 6 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 109 | 6/18/2020 | C06637423 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O.13526 and reflects intelligence sources and methods (information identifying Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the Investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/29/2013 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 110 | 6/18/2020 | C06637424 | Internal Investigative Handwritten Notes.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(5) was asserted to protect pre- decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 11/16/2012 | 5 | DIF | (b)(3) CIA Act, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 111 | 6/18/2020 | C06637425 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O.13526 and reflects intelligence sources and methods (names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/14/2012 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 112 | 6/18/2020 | C06637426 | Internal Investigative Handwritten Notes.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was  invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 1/29/2013 | 2 | DIF | (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 113 | 6/18/2020 | C06637427 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O.13526 and reflects intelligence sources and methods (information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/29/2013 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 114 | 6/18/2020 | C06637428 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O.13526 and reflects intelligence sources and methods (information regarding Agency security protocols).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/30/2013 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 115 | 6/18/2020 | C06637429 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O.13526 and reflects intelligence sources and methods (covert locations).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also asserted to protect unclassified intelligence sources and methods.  Exemption (b)(5) was asserted to protect predecisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/30/2013 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 116 | 6/18/2020 | C06637430 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information identifying Agency technical capability).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/30/2013 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 117 | 6/18/2020 | C06637431 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel).  Exemption (b)(3) (CIA Act) was asserted toprotect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | Unknown | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 118 | 6/18/2020 | C06637432 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | Unknown | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 119 | 6/18/2020 | C06637433 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/28/2013 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 120 | 6/18/2020 | C06637434 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information identifying Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | Unknown | 1 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 121 | 6/18/2020 | C06637435 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | Unknown | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 122 | 6/18/2020 | C06637436 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/28/2013 | 5 | DIF | (b)(1), (b)(3) CIA Act , (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 123 | 6/18/2020 | C06637437 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | Unknown | 2 | DIF | (b)(1), (b)(3) CIA Act , (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 124 | 6/18/2020 | C06637438 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (names of covert personnel). Exemption (b)(3) (CIA Act) as invoked to protect identifying information of CIA personnel (names, phone numbers). Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | Unknown | 2 | DIF | (b)(1), (b)(3) CIA Act , (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 125 | 6/18/2020 | C06637439 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | Unknown | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 126 | 6/18/2020 | C06637440 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information identifying Agency information systems and information security protocols). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by, individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | Unknown | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 127 | 6/18/2020 | C06637441 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/28/2013 | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 128 | 6/18/2020 | C06637442 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O.13526 and reflects intelligence sources and methods (covert locations).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | Unknown | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 129 | 6/18/2020 | C06637443 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information identifying Agency information security protocols).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/30/2013 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 130 | 6/18/2020 | C06637444 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency information security protocols ). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens in the investigation. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | Unknown | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 131 | 6/18/2020 | C06637445 | Internal Investigative Handwritten Notes. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens. Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation. Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/23/2013 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 132 | 6/18/2020 | C06637446 | Internal Investigative Handwritten Notes.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (information regarding Agency technical capability).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, phone numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. The handwritten notes contain opinions and thoughts of the investigators that would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names  and/or other personal information of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | Unknown | 5 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 133 | 6/18/2020 | C06865546 | Internal Agency e-mail concerning the FBI investigation.  Exemption (b)(3) (National Security Act) applies to certain material that reflects unclassified intelligence sources and methods.  Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, official title, and telephone numbers).  Exemption (b)(3) (National Security Act) was  invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation. This document includes a summary of investigative activity and related request concerning a subsequent investigation related action as a result of the investigative activity.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protected the names and/or other personal infomration other of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 1/24/2013 | 1 | DIF | (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 134 | 6/18/2020 | C06865547 | Internal Agency e-mail concerning details of the FBI investigation in preparation for a meeting with FBI. Exemptions (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (intelligence activities).  Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers, official title, and Agency identification number).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional recommendations and deliberations among OIG personnel related to assisting with the FBI investigation.  This document includes proposed questions for FBI regarding its investigation for review, comment, edits, revisions, and recommendations in preparation for a meeting with the FBI.  Disclosure of this document would reveal internal agency deliberations on particular issues related to the investigation and would also reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/27/2012 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 135 | 6/18/2020 | C06865548 | Internal Agency e-mail concerning the FBI Investigation.  Exemption (b)(3) (National Security Act) applies to certain material that reflects intelligence sources and methods (information security).  Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers, and official title).  Exemption (b)(3) (National Security Act) was asserted to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional recommendations and deliberations between OIG and Agency personnel related to assisting with the FBI investigation.  This document includes a discussion and status request regarding a particular area of interest in the FBI investigation for which the Agency is providing assistance.  Disclosure of this document would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 1/29/2013 | 2 | DIF | (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 136 | 6/18/2020 | C06865551 | E-mail correspondence between the Agency and FBI concerning a request for CIA documents. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, intelligence activities, and intelligence methods, code name, and classification dissemination markings). Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers, office locations, Agency identification number, and official title). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional inter-agency deliberations related to the FBI investigation. This email contains an attachment of several memoranda of investigative activity conducted by OIG personnel provided to the FBI pursuant to the FBI's request. Disclosure of this document would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel or other government employees. Exemption (b)(7)(C) was asserted to protect the names of Agency, non-Agency federal employees, and private citizens involved in the investigation. Exemption (b)(7)(D) was asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/7/2013 | 29 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 137 | 6/18/2020 | C06865552 | E-mail correspondence between the Agency and FBI concerning a request for CIA documents. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, intelligence activities, intelligence methods, and classification dissemination markings). Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers, office locations, Agency identification number, and official title). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional inter-agency deliberations related to the FBI investigation. This email contains an attachment of several memoranda of investigative activity conducted by OIG personnel that was provided to the FBI pursuant to the FBI's request. Disclosure of this document would reveal the direction, progress, and focus of the investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel or other government employees. Exemption (b)(7)(C) was asserted to protect the names of Agency, non-Agency federal employees, and private citizens involved in the investigation. Exemption (b)(7)(D) was asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with OIG under an implied promise of confidentiality per Agency policy. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/7/2013 | 31 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 138 | 6/18/2020 | C06865553 | E-mail correspondence between the Agency and FBI concerning a request for CIA documents.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, intelligence activities, intelligence methods).  Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers, office locations, Agency identification number, and official title).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional inter-agency deliberations related to the FBI investigation.  This email contains an attachment of several memoranda of investigative activity conducted by OIG personnel that was provided to the FBI pursuant to the FBI's request.  Disclosure of this document would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel or other government employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency, non-Agency federal employees, and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/7/2013 | 22 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 139 | 6/18/2020 | C06865555 | E-mail correspondence between the Agency and FBI concerning a request for CIA documents related to the FBI investigation.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel).  Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone number, Agency identification number, and official title).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional inter-agency deliberations related to the FBI investigation.  This email contains an attachment of several memoranda of investigative activity conducted by OIG personnel that was provided to the FBI pursuant to the FBI's request.  It also includes a status report of certain investigative activities.  Disclosure of this document would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel or other government employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of individuals interviewed in the course of the investigation who were speaking with OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as CONFIDENTIAL and as such, disclosure of this information could be reasonably expected to result in damage to national security. | 1/8/2013 | 7 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 140 | 6/18/2020 | C06865557 | Internal Agency e-mail concerning the FBI Investigation.  Exemption (b)(3) (National Security Act) applies to certain material that reflects unclassed intelligence sources and methods (information security).  Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers, and official title).  Exemption (b)(5) was asserted to protect pre-decisional recommendations and deliberations between OIG and Agency personnel related to assisting with the FBI investigation.  This document includes a discussion and status request regarding a particular area of interest in the FBI investigation for which the Agency is providing assistance.  Disclosure of this document would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. | 1/23/2013 | 1 | DIF | (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6) |
| 141 | 6/18/2020 | C06865560 | Internal Agency e-mail concerning details of the FBI investigation in preparation for a discussion with FBI.  Exemptions (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (intelligence activities).  Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers, official title, and Agency identification number).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassed intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional recommendations and deliberations among OIG personnel related to assisting with the FBI investigation.  This document includes proposed questions for FBI regarding its investigation for review, comment, edits, revisions, and recommendations in preparation for a meeting with the FBI.  Disclosure of this document would reveal internal agency deliberations on particular issues related to the investigation and would also reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel or other government employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/28/2012 | 3 | DIF | (b)(1) (b)(3) CIA Act, (b)(3) NatSec Act, (b)(5), (b)(6), (b)(7)(C) |
| 142 | 6/18/2020 | C06865561 | Internal Agency e-mail concerning details of the FBI investigation in preparation for a discussion with FBI.  Exemptions (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (intelligence activities).  Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers, official title, and Agency identification number).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassed intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency and inter-agency deliberations related to the investigation.  This document includes questions for FBI regarding its investigation for discussion that was prepared by the Office of the Inspector General for meeting with the FBI.  Disclosure of this document would reveal inter-agency and intra-agency deliberations on a particular issues related to the investigation and would also reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/27/2012 | 2 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 143 | 6/18/2020 | C06865562 | Internal Agency e-mail concerning correspondence with the FBI regarding information related to the investigation.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (intelligence activities, covert locations, and classification dissemination markings).  Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, official titles, telephone numbers, office location, and Agency identification number).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  This document contains a discussion of information related to the FBI investigation and the passage of such information to the FBI and other related areas of the government.  Disclosure would reveal the direction, progress, and focus of the investigation.  In addition, the attorney client privilege was also asserted to protect these discussions, which consist of legal guidance provided by a CIA attorney that was solicited by an Agency personnel.  Exemption (b)(6) was asserted to protect the personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect identifying information of individuals involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals related to FBI's investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as TOP SECRET, and as such, disclosure of this information could be reasonably expected to result in exceptionally grave damage to national security. | 11/27/2012 | 7 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 144 | 6/18/2020 | C06865563 | Internal Agency e-mail concerning details of the FBI investigation in preparation for a discussion with FBI.  Exemptions (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (intelligence activities).  Exemptions (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, telephone numbers, official title, and Agency identification number).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional recommendations and deliberations among OIG related to assisting with the FBI investigation.  This document includes proposed questions for FBI regarding its investigation for review, comment, edits, revisions, and recommendations in preparation for a meeting with the FBI.  Disclosure of this document would reveal internal agency deliberations on particular issues related to the investigation and would also reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/27/2012 | 3 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 145 | 6/18/2020 | C06890069 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 3/11/2015 | 13 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5) (b)(6), (b)(7)(C) |
| 146 | 6/18/2020 | C06890070 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 2/28/22014 | 12 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 147 | 6/18/2020 | C06890072 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/30/2014 | 10 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 148 | 6/18/2020 | C06890074 | Internal Agency Emails and OIG Sensitive Case Report. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/7/2014 | 10 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5) (b)(6), (b)(7)(C) |
| 149 | 6/18/2020 | C06890075 | Internal Agency Emails and Draft of OIG Sensitive Case Report. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, telephone numbers, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 12/2/2013 | 10 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 150 | 6/18/2020 | C06890076 | Internal Agency Emails and Draft of OIG Sensitive Case Report. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, telephone numbers, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/4/2013 | 13 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

**Central Intelligence Agency** *Vaughn* **Index**

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 151 | 6/18/2020 | C06890077 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 10/28/2013 | 12 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 152 | 6/18/2020 | C06890078 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, telephone numbers, email addresses).  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 9/30/2013 | 13 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 153 | 6/18/2020 | C06890079 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 9/26/2013 | 26 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

**Central Intelligence Agency** *Vaughn* **Index**

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 154 | 6/18/2020 | C06890081 | Internal Agency Emails and OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 9/4/2013 | 10 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 155 | 6/18/2020 | C06890167 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as TOP SECRET, and as such, disclosure of this information could be reasonably expected to result in exceptionally grave damage to national security. | 7/29/2013 | 28 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 156 | 6/18/2020 | C06890168 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as TOP SECRET, and as such, disclosure of this information could be reasonably expected to result in exceptionally grave damage to national security. | 5/29/2013 | 13 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 157 | 6/18/2020 | C06890169 | Internal Agency Emails and OIG Sensitive Case Report. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as TOP SECRET, and as such, disclosure of this information could be reasonably expected to result in exceptionally grave damage to national security. | 5/1/2013 | 12 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |
| 158 | 6/18/2020 | C06890170 | Internal Agency Emails and Draft of OIG Sensitive Case Report. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 3/26/2013 | 15 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5) (b)(6), (b)(7)(C) |
| 159 | 6/18/2020 | C06890171 | Internal Agency Emails and Draft of OIG Sensitive Case Report. Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses). Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation. Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel. Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations. The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated. This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 2/27/2013 | 16 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 160 | 6/18/2020 | C06890172 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/31/2013 | 21 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7C) |
| 161 | 6/18/2020 | C06890173 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 1/7/2013 | 24 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7C) |
| 162 | 6/18/2020 | C06890174 | Internal Agency Emails and Draft of OIG Sensitive Case Report.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (covert personnel, covert locations, intelligence activites, identifying information regarding Agency information systems).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, telephone numbers, email addresses).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to next steps in more than one investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in investigations.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/27/2012 | 36 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7C) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Exemptions Cited |
|---|---|---|---|---|---|---|---|
| 163 | 6/18/2020 | CO6615245 | Memorandum of Investigative Activity/CIA Employee.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence methods and activities.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations related to the investigation.  Disclosure would reveal the direction, progress, and focus of the investigation.  Exemption (b)(6) was asserted to protect the names and/or other personal information of Agency personnel and private citizens.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released.  This document is withheld in full because there is no meaningful, non-exempt information that can be reasonably segregated.  This document is properly classified as SECRET, and as such, disclosure of this information could be reasonably expected to result in serious damage to national security. | 11/14/2012 | 4 | DIF | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 164 | 6/18/2020 | C06615284 | OIG Memorandum of Investigative Activity.  Exemption (b)(3) (National Security Act) applies to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (classification and dissemination control markings).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and telephone numbers). Exemption (b)(3) (National Security Act) was asserted to protect unclassified intelligences sources and methods.  Exemption (b)(6) was asserted to protect the names of Agency employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency employees involved in the investigation. | 2/19/2013 | 1 | RIP | (b)(3) CIA Act, (b)(3) NatSecAct, (b)(6), (b)(7)(C) |
| 165 | 6/18/2020 | C06615314 | Letter from OIG to FBI Investigations Concerning CIA Documents.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (code names and names of covert personnel). Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and agency identification numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional inter-agency deliberations related to interactions with DOJ.  Exemption (b)(6) was asserted to protect the names of Agency and non-Agency federal employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency and non-Agency federal employees involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with Agency OIG under an implied promise of confidentiality per Agency policy.  This document is properly classified as SECRET, and as such, disclosure of the information withheld pursuant to Exemption (b)(1) could be reasonably expected to result in serious damage to national security. | 5/14/2013 | 16 | RIP | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |

The Transparency Project v. U.S. Department of Justice, et al., 4:20-CV-00467-SDJ

Central Intelligence Agency *Vaughn* Index

| Entry No. | FOIA Request | CADRE No. | Description of Document and Information Withheld | Date of Doc. | No. of Pages | Release Decision | Examptions Cited |
|---|---|---|---|---|---|---|---|
| 166 | 6/18/2020 | C06615320 | Letter from OIG to FBI Investigations Concerning CIA Documents.  Exemption (b)(1) and (b)(3) (National Security Act) apply to certain material that is classified under 1.4(c) of E.O. 13526 and reflects intelligence sources and methods (code names and names of covert personnel).  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names and agency identification numbers).  Exemption (b)(3) (National Security Act) was also invoked to protect unclassified intelligences sources and methods.  Exemption (b)(5) was asserted to protect pre-decisional inter-agency deliberations related to interactions with DOJ.  Exemption (b)(6) was asserted to protect the names of Agency and non-Agency federal employees.  Exemption (b)(7)(C) was asserted to protect the names of Agency and non-Agency federal employees involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with the understanding of implied confidentiality per Agency policy.  This document is properly classified as SECRET, and as such, disclosure of the information withheld pursuant to Exemption (b)(1) could be reasonably expected to result in serious damage to national security. | 4/16/2013 | 10 | RIP | (b)(1), (b)(3) CIA Act, (b)(3) NatSecAct, (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) |
| 167 | 6/18/2020 | C06615364 | Inter-agency emails regarding suspicious email.  Exemption (b)(3) (CIA Act) was asserted to protect identifying information of CIA personnel (names, email addresses, titles).  Exemption (b)(6) was asserted to protect the names of Agency employees.  Exemption (b)(7)(C) was asserted to protect the names of federal employees and private citizens involved in the investigation.  Exemption (b)(7)(D) was also asserted to protect identifying information of, and information provided by individuals interviewed in the course of the investigation who were speaking with the understanding of implied confidentiality.  Exemption (b)(7)(E) was asserted to protect investigation techniques and procedures used by the FBI. | 11/14/2012 | 3 | RIP | (b)(3) CIA Act, (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E) |

# EXHIBIT B

F-2020-01504

## THE TRANSPARENCY PROJECT

P.O. Box 20753
Brooklyn, New York 11202
(979) 985-5289

MAY 2 9 2020

May 28, 2020

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
Fax: 703-613-3007

Re: Freedom of Information Act Request

To Whom It May Concern:

I write on behalf of the The Transparency Project ("TTP"), a nonprofit corporation headquartered in Texas, to request information about the removal, transfer, copying or stealing of data from Democratic National Committee (hereinafter "DNC") computer servers in 2016, data which was later published by Wikileaks.[1] That event will hereinafter be referred to as the "2016 Data Breach." I make these requests under the authority of the Freedom of Information Act, 5 U.S.C. § 552.

1. I request the opportunity to view all metadata, communications (internal or external), records, documents, reports or other evidence regarding whether the CIA, its Directorate of Digital Innovation, or any of the CIA's foreign or domestic affiliates, agents, employees or contractors played a role in inserting Russian "fingerprints" (e.g., "COZY BEAR" or "FANCY BEAR") into data from the 2016 Data Breach. In other words, the CIA should produce all evidence indicating whether the CIA, its Directorate of Digital Innovation or any of the CIA's foreign or domestic affiliates, agents, employees or contractors inserted or fabricated evidence to make it appear that Russians or other third parties were responsible for the 2016 Data Breach. This includes, for example, any and all evidence that the Directorate of Digital Innovation created or operated the "Guccifer 2.0" or "DCLeaks" profiles or any other online profile used to promote or distribute data from the 2016 Data Breach.

2. I request the opportunity to view all tangible evidence indicating whether the 2016 Data Breach was the result of (1) outside forces (e.g., Russian agents, Pakistani agents, etc.) who hacked the servers from a remote location or (2) an individual or individuals who were present at or inside DNC facilities and copied the data onto a storage device. If, for example, the CIA obtained any communications between Seth Rich and Julian Assange or Wikileaks (e.g., from the National Security Agency, the United Kingdom's Government Communications Headquarters, or any other person or entity), then those communications should be produced. If the CIA has any evidence whatsoever that the DNC servers were

---

[1] The following terms or their derivatives are used interchangeably in this subpoena when referring to the movement of the relevant DNC data: leak, hack, remove, transfer, copy, or steal.

hacked externally or that DNC data was leaked from an internal source, that evidence should be produced.

3.  Former CIA Director John Brennan testified that in the summer of 2016, he convened a task force / working group involving the CIA, NSA and FBI to investigate intelligence showing contact between Russian officials and Trump affiliates. I wish to view all documents, records, and/or communications that (1) identify the name and agency affiliation of each member of the task force / working group as well as (2) the dates that each such person began and ceased working with the group. I also wish to view all documents, records, and/or communications indicating whether the task force / working group fabricated or attempted to fabricate evidence of collusion between Donald Trump (or his presidential campaign) and Russian officials. If, for example, individuals from the task force tried to create the false impression that Trump campaign officials were acting at the behest of Russian officials, any and all evidence of that should be produced.

I also seek the following information on behalf of TTP as permitted by the Freedom of Information Act:

4.  For the period from January 20, 2009 until the present, I wish to see all documents, records, communications, and guidelines reflecting any plans or efforts by the CIA to gain, cultivate or exercise influence over any U.S. journalist or journalism entity. This request includes, but is not limited to, documents or communications that reflect an attempt to insert CIA personnel, contractors, or allies into U.S. media companies. This request further includes, but is not limited to, documents reflecting payments (direct or indirect) to U.S. journalists or journalism entities.

5.  For the period from January 20, 2009 until the present, I wish to see all documents, records, communications, and guidelines reflecting any plans or efforts by the CIA to gain, cultivate or exercise influence over any U.S. social media company (e.g., Facebook or Twitter) for purposes of influencing its algorithms or the prevalence of (1) particular posts or publications or (2) particular types of posts or publications. This request includes, but is not limited to, documents or communications that reflect an attempt to insert CIA personnel, contractors, or allies into such a company.

6.  For the period from January 20, 2009 until the present, I wish to see all documents, records, communications, and guidelines reflecting any plans or efforts by the CIA to gain, cultivate or exercise influence over any U.S. search engine company (e.g., Google) for purposes of influencing its algorithms or the prevalence of search results. This request includes, but is not limited to, documents or communications that reflect an attempt to insert CIA personnel, contractors, or allies into such a company.

7.  For the period from January 20, 2009 until the present, I wish to see all documents, records, communications, and guidelines reflecting any plans or efforts by the CIA to surveil journalists and/or journalism companies in the United States. This request includes, but is not limited to, (1) plans or efforts to hack into the computer systems, online accounts, or electronic devices of journalists or journalism companies in the United States, and (2) any

documents, records, or communications obtained as a result of such hacking efforts. This request further includes, but is not limited to, documents, records, or communications identifying (1) the CIA affiliates, agents, employees or contractors involved in such activities, and (2) the targets of any such activities.

8. For the period from January 20, 2009 until the present, I wish to see all documents, records, communications, and guidelines reflecting any plans or efforts by the CIA to influence the contents of any entertainment production in the United States, *e.g.*, movies, television programs, radio programs, podcasts, Netflix productions, etc.

TTP intends to use the requested information to educate the public about the prevalence of misconduct in the CIA, therefore I request a waiver of any fees. If charges will apply, please let me know the approximate amount of such charges in advance. I can be reached by email at tyclevenger@yahoo.com if you need additional information.

Sincerely,

Ty Clevenger
Executive Director

# EXHIBIT C

Central Intelligence Agency



Washington, D.C. 20505

15 June 2020

Mr. Ty Clevenger
The Transparency Project
P.O. Box 20753
Brooklyn, NY 11202-0753

Reference:  F-2020-01504

Dear Mr. Clevenger:

On 29 May 2020, the office of the Information and Privacy Coordinator received your 28 May 2020 correspondence, on behalf of The Transparency Project, requesting records under the Freedom of Information Act (FOIA).  This is a quick acknowledgement to advise you that we received your request **for records on the "2016 Data Breach" [as identified in your request].** Your request was assigned the reference number above.  Please use this number when corresponding so that we can identify it easily.

Our officers will review and process your request in more detail and will only communicate to you if they should encounter any problems or if they cannot begin the search without additional information or clarification.  Unless you object, we will search for CIA-originated records up to and including the date the Agency starts its search.  To check the status of your FOIA request, please access https://www.cia.gov/library/readingroom/request/status on the Agency's website and enter the above reference number.

Sincerely,

Mark Lilly
Information and Privacy Coordinator

# EXHIBIT D

# THE TRANSPARENCY PROJECT

P.O. Box 20753
Brooklyn, New York 11202
(979) 985-5289

F-2020-01646

June 18, 2020

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Director, Information Management Division
Office of the Director of National Intelligence
Washington, D.C. 20511

FOIA Initiatives Coordinator
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W., Room 6150
Washington, D.C. 20530-0001

Federal Bureau of Investigation
Attn: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

Re: Freedom of Information Act Request

To Whom It May Concern:

I write on behalf of the The Transparency Project ("TTP"), a nonprofit corporation headquartered in Texas, to request information pursuant to the Freedom of Information Act, 5 U.S.C. § 552.

1.  I request the opportunity to view all documents, records, communications and/or other tangible evidence reflecting or pertaining to surveillance of Edward Butowsky of Texas or Matt Couch of Arkansas. The term "surveillance" includes, but is not limited to, any attempt to hack into the computers, phones, other electronic devices, and/or online accounts of Mr. Butowsky or Mr. Couch. If any information obtained by surveillance was relayed to third parties, that information should be produced for inspection.

2.  I request the opportunity to view all documents, records, communications and/or other tangible evidence pertaining to whether former Central Intelligence Agency Director David Petraeus mishandled classified information or sold such information during his tenure as CIA director. This request includes, but is not limited to, documents, records,

communications and/or other tangible evidence in the possession of the Office of the Inspector General of the CIA and/or the Office of the Intelligence Community Inspector General. This request further includes, but is not limited to, any draft indictments, draft arrest warrants, actual arrest warrants, and/or records of arrest.

I have attached release authorizations from Mr. Butowsky and Mr. Couch. TTP intends to use the requested information to educate the public about government misconduct, therefore I request a waiver of any fees. If charges will apply, please let me know the approximate amount of such charges in advance. I can be reached by email at tyclevenger@yahoo.com if you need additional information.

Sincerely,

Ty Clevenger
Executive Director

June 16, 2020

National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Room 6150
Washington, D.C. 20530-0001

Federal Bureau of Investigation
Attn: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

To Whom It May Concern:

      I authorize the U.S. Department of Justice, the Federal Bureau of Investigation, and the Central Intelligence Agency to release information about me to The Transparency Project, a nonprofit Texas corporation. Specifically, I authorize your respective agencies to release whatever information The Transparency Project requests.

      If you want to contact me to confirm this authorization, I can be reached at the email address and/or phone number below. Thank you for your attention to this matter.

Matthew C. Couch

Matthew C. Couch

To

From: Ty Clevenger    Fax: 19795309523    To:    Fax: (703) 613-3007    Page: 4 of 4    06/16/2020 3:51 PM

June 16, 2020

National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Room 6150
Washington, D.C. 20530-0001

Federal Bureau of Investigation
Attn: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

To Whom It May Concern:

I authorize the U.S. Department of Justice, the Federal Bureau of Investigation, and the Central Intelligence Agency to release information about me to The Transparency Project, a nonprofit Texas corporation. Specifically, I authorize your respective agencies to release whatever information The Transparency Project requests.

If you want to contact me to confirm this authorization, I can be reached at the email address and/or phone number below. Thank you for your attention to this matter.



ED BUTOWSKY

# EXHIBIT E

Central Intelligence Agency



Washington, D.C. 20505

4 June 2021

Ty Clevenger
P.O. Box 20753
Brooklyn, New York 11202-0753

Reference: F-2020-01504, F-2020-01646; Civil Action No. 4:20-cv-00467

Dear Mr. Clevenger:

This letter is an interim response to the 28 May 2020 and 18 June 2020 Freedom of Information Act (FOIA) requests submitted by your client, The Transparency Project, and subsequent litigation, seeking information regarding:

1. **(a) whether the CIA, its Directorate of Digital Innovation or any of the CIA's foreign or domestic affiliates, agents, employees or contractors inserted or fabricated evidence to make it appear that Russians or other third parties were responsible for the 2016 Data Breach;**
1. **(b) whether the 2016 Data Breach was the result of (1) outside forces or (2) an individual or individuals who were present at or inside the DNC facilities;**
1. **(c) (1) the name and agency affiliation of each member of [former CIA Director John Brennan's] task force / working group to investigate intelligence showing contact between Russian officials and Trump affiliates, (2) the dates that each person began and ceased working with the group, and (3) whether the task force attempted to fabricate evidence of collusion between Donald Trump and Russian officials;**
1. **(d) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to gain, cultivate, or exercise influence over any U.S. journalist or journalism entity;**
1. **(e) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to gain, cultivate, or exercise influence over any U.S. social media company;**
1. **(f) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to gain, cultivate, or exercise influence over any U.S. search engine company;**
1. **(g) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to surveil journalists and/or journalism companies in the United States;**
1. **(h) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to influence the contents of any entertainment production in the United States;**
2. **(a) surveillance of Edward Butowsky or Matt Couch;**
2. **(b) whether former CIA Director David Petraeus mishandled classified information or sold such information during his tenure as CIA director.**

The above is a high-level summary of the referenced FOIA requests solely for the purposes of identifying them and making reference to them in this interim response letter. It is not an attempt to capture all aspects of the requests.

We are processing these requests in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 3141, as amended.

With respect to Items 1(a), 1(b), 1(c)(3), 1(d)-(h) and 2(a), as listed above, in accordance with Section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to these portions of your request. The fact of the existence or nonexistence of such records is itself currently and properly classified and is intelligence sources and methods information protected from disclosure by statute. You may consider this finding a denial of these portions of your request pursuant to FOIA exemptions (b)(1) and (b)(3). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended, and Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C. 3024(i)(1), as amended.

With respect to Items 1(c)(1) and 1(c)(2), we have completed a review of five (5) documents and determined that those five documents must be withheld in their entirety on the basis of FOIA exemptions (b)(1), (b)(3), (b)(5), and (b)(6). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended, and Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1), as amended.

With respect to Item 2(b), we have completed a review one-hundred and sixty (160) documents and determined one-hundred and fifty-seven (157) of those documents must be withheld in their entirety on the basis of FOIA exemptions (b)(1), (b)(3), (b)(5), (b)(6), and/or (b)(7)(c). We have determined that three (3) of those documents can be released in segregable form with redactions made on the basis of FOIA exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(c), and/or (b)(7)(d). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended, noted as exemption "(b)(3)CIAAct" on the enclosed documents, and/or Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1), as amended, noted as exemption "(b)(3)NatSecAct" on the enclosed documents. The released documents may be found on the enclosed CD.

We are continuing to process additional documents potentially responsive to Items 1(c)(1), 1(c)(2), and 2(b). This includes other documents pending further coordination with another government agency. A final response will be provided to you on a later date.

Sincerely,

Mark Lilly
Information and Privacy Coordinator

Enclosures

# EXHIBIT F



Ty Clevenger
P.O. Box 20153
Brooklyn, NY
11202-0153

Hand Opened
JUL 06 2021
and Inspected

7020 2450 0001 9626 5701

NIXIE        061   CO 1        0206/23/21
             RETURN TO SENDER
                UNCLAIMED
             UNABLE TO FORWARD

BC: 20505        0060N17420I-00313



Central Intelligence Agency

Washington, D.C. 20505

4 June 2021

JUL 0 7 2021

Ty Clevenger
P.O. Box 20753
Brooklyn, New York 11202-0753

Reference: F-2020-01504, F-2020-01646; Civil Action No. 4:20-cv-00467

Dear Mr. Clevenger:

This letter is an interim response to the 28 May 2020 and 18 June 2020 Freedom of Information Act (FOIA) requests submitted by your client, The Transparency Project, and subsequent litigation, seeking information regarding:

1. **(a) whether the CIA, its Directorate of Digital Innovation or any of the CIA's foreign or domestic affiliates, agents, employees or contractors inserted or fabricated evidence to make it appear that Russians or other third parties were responsible for the 2016 Data Breach;**
1. **(b) whether the 2016 Data Breach was the result of (1) outside forces or (2) an individual or individuals who were present at or inside the DNC facilities;**
1. **(c) (1) the name and agency affiliation of each member of [former CIA Director John Brennan's] task force / working group to investigate intelligence showing contact between Russian officials and Trump affiliates, (2) the dates that each person began and ceased working with the group, and (3) whether the task force attempted to fabricate evidence of collusion between Donald Trump and Russian officials;**
1. **(d) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to gain, cultivate, or exercise influence over any U.S. journalist or journalism entity;**
1. **(e) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to gain, cultivate, or exercise influence over any U.S. social media company;**
1. **(f) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to gain, cultivate, or exercise influence over any U.S. search engine company;**
1. **(g) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to surveil journalists and/or journalism companies in the United States;**
1. **(h) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to influence the contents of any entertainment production in the United States;**
2. **(a) surveillance of Edward Butowsky or Matt Couch;**
2. **(b) whether former CIA Director David Petraeus mishandled classified information or sold such information during his tenure as CIA director.**

The above is a high-level summary of the referenced FOIA requests solely for the purposes of identifying them and making reference to them in this interim response letter. It is not an attempt to capture all aspects of the requests.

We are processing these requests in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 3141, as amended.

With respect to Items 1(a), 1(b), 1(c)(3), 1(d)-(h) and 2(a), as listed above, in accordance with Section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to these portions of your request. The fact of the existence or nonexistence of such records is itself currently and properly classified and is intelligence sources and methods information protected from disclosure by statute. You may consider this finding a denial of these portions of your request pursuant to FOIA exemptions (b)(1) and (b)(3). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended, and Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C. 3024(i)(1), as amended.

With respect to Items 1(c)(1) and 1(c)(2), we have completed a review of five (5) documents and determined that those five documents must be withheld in their entirety on the basis of FOIA exemptions (b)(1), (b)(3), (b)(5), and (b)(6). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended, and Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1), as amended.

With respect to Item 2(b), we have completed a review one-hundred and sixty (160) documents and determined one-hundred and fifty-seven (157) of those documents must be withheld in their entirety on the basis of FOIA exemptions (b)(1), (b)(3), (b)(5), (b)(6), and/or (b)(7)(c). We have determined that three (3) of those documents can be released in segregable form with redactions made on the basis of FOIA exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(c), and/or (b)(7)(d). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended, noted as exemption "(b)(3)CIAAct" on the enclosed documents, and/or Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1), as amended, noted as exemption "(b)(3)NatSecAct" on the enclosed documents. The released documents may be found on the enclosed CD.

We are continuing to process additional documents potentially responsive to Items 1(c)(1), 1(c)(2), and 2(b). This includes other documents pending further coordination with another government agency. A final response will be provided to you on a later date.

Sincerely,

Mark Lilly
Information and Privacy Coordinator

Enclosures

# EXHIBIT G



Central Intelligence Agency

Washington, D.C. 20505

13 July 2021

Ty Clevenger
212 S. Oxford Street #7D
Brooklyn, NY 11217

Reference: F-2020-01504, F-2020-01646; Civil Action No. 4:20-cv-00467

Dear Mr. Clevenger:

This letter is the final response to the 28 May 2020 and 18 June 2020 Freedom of Information Act (FOIA) requests submitted by your client, The Transparency Project, and subsequent litigation, seeking information regarding:

1. **(a) whether the CIA, its Directorate of Digital Innovation or any of the CIA's foreign or domestic affiliates, agents, employees or contractors inserted or fabricated evidence to make it appear that Russians or other third parties were responsible for the 2016 Data Breach;**
1. **(b) whether the 2016 Data Breach was the result of (1) outside forces or (2) an individual or individuals who were present at or inside the DNC facilities;**
1. **(c) (1) the name and agency affiliation of each member of [former CIA Director John Brennan's] task force/working group to investigate intelligence showing contact between Russian officials and Trump affiliates, (2), the dates that each person began and ceased working with the group, and (3) whether the task force attempted to fabricate evidence of collusion between Donald Trump and Russian officials.**
1. **(d) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to gain, cultivate, or exercise influence over any U.S. journalist or journalism entity;**
1. **(e) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to gain, cultivate, or exercise influence over any U.S. social media company;**
1. **(f) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to gain, cultivate, or exercise influence over any U.S. search engine company;**
1. **(g) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to surveil journalists and/or journalism companies in the United States;**
1. **(h) for the period from January 20, 2009 until the present, any plans or efforts by the CIA to influence the contents of any entertainment production in the United States**
2. **(a) surveillance of Edward Butowsky or Matt Couch;**
2. **(b) whether former CIA Director David Petraeus mishandled classified information or sold such information during his tenure as CIA director.**

The above is a high-level summary of the referenced FOIA requests solely for the purposes of identifying them and making reference to them in this response letter. It is not an attempt to capture all aspects of the requests.

We processed these requests in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 3141, as amended.

With respect to Items 1(a), 1(b), 1(c)(3), 1(d)-(h) and 2(a), as listed above, in accordance with Section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to these portions of your request.  The fact of the existence or nonexistence of such records is itself currently and properly classified and is intelligence sources and methods information protected from disclosure by statute.  You may consider this finding a denial of these portions of your request pursuant to FOIA exemptions (b)(1) and (b)(3).  Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended, and Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C. 3024(i)(1), as amended.

With respect to Items 1(c)(1) and 1(c)(2), we have completed a review of six (6) document and determined that those six documents must be withheld in its entirety on the basis of FOIA exemptions (b)(1), (b)(3), (b)(5), and (b)(6). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended, and Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1), as amended.

With respect to Item 2(b), we have completed a review of one-hundred and sixty (161) documents and one-hundred and fifty-seven (157) of those documents must be withheld in their entirety on the basis of FOIA exemptions (b)(1), (b)(3), (b)(5), (b)(6), and/or (b)(7)(c). We have determined that four (4) documents can be released in segregable form with redactions made on the basis of FOIA exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(c), and (b)(7)(e). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, noted as exemption "(b)(3)CIAAct" on the enclosed documents, and/or Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1), noted as exemption "(b)(3)NatSecAct" on the enclosed documents. The released document may be found on the enclosed CD.

On 4 June 2021, the Agency mailed a CD with three (3) documents and an accompanying cover letter to the P.O. Box address listed in the requests. That envelope was returned unopened on 6 July 2021. Those documents are included in this response.

Additional documents belonging to another government agency were also located; these documents have been referred to that agency for direct response to you. This completes our response to the above referenced requests.

Sincerely,

Mark Lilly
Information and Privacy Coordinator

Enclosure