IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE TRANSPARENCY PROJECT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION No. 4:20CV467 |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., ) | JUDGE SEAN D. JORDAN |
| ) | |
| Defendants. ) | |

## THIRD DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1) I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia. I have held this position since July 2020. With respect to my relevant experience and qualifications, I incorporate by reference the first three paragraphs of my first declaration, submitted on June 16, 2021 (ECF No. 33-1).

(2) This declaration supplements and incorporates by reference my first declaration ("First Seidel Declaration"), and my second declaration at ECF No. 36-1, submitted on July 6, 2021 ("Second Seidel Declaration").

(3) Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. §552a. Specifically, I am familiar with the FBI's handling of an incoming FOIA consultation from the Central Intelligence Agency ("CIA"), forwarded to the FBI in response to a FOIA request from Plaintiff to that agency.

1

(4) In response to CIA's consultation with the FBI, the FBI asserted withholdings on a total of three (3) pages of consulted records subject to the FOIA. The FBI's withholdings on those three pages fall within CIA document number C06615364. The FBI submits this declaration in support of Defendants' motion for summary judgment to provide the Court with a summary of the administrative history of CIA's consultation with the FBI; the procedures used to review and process responsive records; and in accordance with *Vaughn v. Rosen*, 424 F.2d 820 (D.C. Cir. 1973), to provide the FBI's justification for withholding information in part pursuant to FOIA Exemptions 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(E).

## ADMINISTRATIVE HISTORY OF CONSULTATION

(5) By letter dated May 25, 2021, the FBI received a FOIA consultation from CIA, requesting review and return of the records to CIA regarding three pages responsive to Plaintiff's FOIA request to CIA.[1]

(6) By letter dated June 25, 2021, the FBI returned the consulted records to CIA, requesting that portions of the information be withheld pursuant to subsections (b)(6), (b)(7)(C), and (b)(7)(E) of Title 5, United States Code, Section 552, and that the remainder of the information may be disclosed.

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

(7) The FBI processed all consulted documents to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all reasonably segregable, non-exempt information. The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff. Further description of the information

---

[1] Plaintiff's FOIA request to CIA was also addressed to the FBI; however, the FBI's handling of this request will be addressed at a later date alongside the other requests directed to the FBI in this case.

2

withheld, beyond what is provided in this declaration, could identify the actual exempt information protected by the FBI.

(8) Additionally, the FBI further categorized its application of exemptions to better explain the nature of the information withheld pursuant to the provisions of the FOIA. All three pages consulted to the FBI are numbered with CIA's document number C06615364. The FBI has broken down its withholdings into various categories of exempt information. These categories are provided to aid the Court's and Plaintiff's review of the FBI's explanations of the FOIA exemptions it has asserted to withhold the material. This declaration demonstrates that all material withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemptions, or is so intertwined with protected material, segregation is not possible without revealing the underlying protected material.

(9) Listed below are the categories used to explain the FOIA exemptions the FBI asserted to withhold information:

| SUMMARY OF EXEMPTION JUSTIFICATION CATEGORIES ||
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Exemptions 6 & 7(C)** | **Unwarranted/Clearly Unwarranted Invasion of Personal Privacy** |
| (b)(6) and (b)(7)(C) | Names and a Telephone Number of FBI Special Agents |
| (b)(6) and (b)(7)(C) | Names and Other Identifying Information of Third-Party Victims |
| **Exemption 7(E)** | **Law Enforcement Techniques and Procedures** |
| (b)(7)(E) | Collection and Analysis of Information |
| (b)(7)(E) | Internal FBI Telephone Number of an FBI Special Agent |

**EXEMPTION 7 THRESHOLD**

(10) Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM)

3

and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled by the CIA and relate to the FBI's investigation of retired General David Petraeus regarding the mishandling of classified information, 18 U.S.C. § 1924. Considering these records were compiled to document the FBI's investigation of a potential crime, the FBI determined they were compiled for a law enforcement purpose.

## FOIA EXEMPTIONS (b)(6) AND (b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

(11)  Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

(12)  Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[2]

---

[2] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

(13) When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or other identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual, their name, or their identifying information[3] would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance wherein information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.

(14) Furthermore, considering privacy concerns are typically obviated once an individual is deceased,[4] when processing FOIPA requests, the FBI takes several steps to ascertain the current life/death status of the individuals whose names are withheld. The FBI uses the birth date and/or the date of the investigation to determine whether an individual is living or deceased, to the extent either or both of these pieces of information are discernable from the file.

---

[3] Hereafter, other identifying information includes the following: telephone numbers, email addresses, and singular professional titles.

[4] In some circumstances, surviving relatives of a deceased individual retain privacy interests in their information, even after the individual's death. *See generally National Archives v. Favish*, 124 S. Ct. 1570 (2004).

5

The date of birth is used to apply the judicially-recognized "100-year rule," i.e., if the individual was born more than 100 years ago, the FBI presumes that he or she is dead and the name is released. The FBI also uses institutional knowledge gained from prior FOIA requests or internal records. By using institutional knowledge, the FBI can identify with sufficient certainty the life/death status of certain individuals. If the FBI is unable to determine the life/death status of an individual through the use of these methods, the name of the individual is withheld pursuant to Exemptions 6 and 7(C), when it finds disclosure would constitute an unwarranted invasion of those individuals' privacy should they still be living and no public interest would be served in releasing the names. It is also the FBI's policy to release all names of high-ranking FBI officials in policy-making positions, as well as individuals in public positions, as they do not have privacy rights while acting in their official capacity. This policy is applied to the individual's position at the time of the document, and not the present.

(b)(6) AND (b)(7)(C): NAMES AND A TELEPHONE NUMBER OF FBI SPECIAL AGENTS

(15) Within this exemption category, the FBI protected the names and a telephone number of FBI Special Agents ("SAs"). The FBI asserted this exemption category on pages 1 and 2 of CIA document C06615364. These FBI SAs were responsible for conducting, supervising, and maintaining the investigation related to retired general David Petraeus, reflected in the documents consulted to the FBI by CIA. These responsibilities included, but were not limited to, the following: coordinating/completing tasks in support of the FBI's investigative and administrative functions, compiling information, and reporting on the status of the investigation.

(16) Assignments of SAs to any particular investigation are not by choice. Publicity, adverse or otherwise, arising from a particular investigation may seriously prejudice their effectiveness in conducting other investigations or performing their day-to-day work. The

privacy consideration is also applied to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into various criminal and national security violation cases. The publicity associated with the release of an SA's identity in connection with a particular investigation could trigger hostility toward a particular SA. During the course of an investigation, an SA may engage with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. Persons targeted by such investigations, or those sympathetic to those targeted, could seek to inflict violence on an SA based on their participation in an investigation. This is because an individual targeted by such law enforcement actions may carry a grudge against those involved with the investigation, which may last for years. These individuals may seek revenge on SAs and other federal employees involved in a particular investigation. There is no public interest served by disclosing the SA's identities because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy; and the FBI properly withheld the names and a telephone number of FBI SAs pursuant to Exemptions 6 and 7(C).

(b)(6) AND (b)(7)(C): NAMES AND IDENTIFYING INFORMATION OF THIRD-PARTY VICTIMS

(17) In this exemption category, the FBI protected the names and identifying information of third-party victims. The FBI asserted this exemption category on pages 1-3 of CIA document C06615364. Specifically, the FBI protected the names, email addresses, identifying email details, and singular professional titles of third-party victims. Releasing these individuals' identities in the context of these investigative records would cause embarrassment,

as well as unsolicited and unnecessary attention to be focused on these individuals. Such a release could force them to relive emotionally trying events, causing further invasion of their privacy, in excess of the harms they've already been forced to endure. Thus, these victims maintain strong privacy interests in the protection of such personal information. Furthermore, there is no legitimate public interest to be served by releasing the identities of these victims because their identities, themselves, would not shed light on the operations and activities of the FBI. The FBI determined disclosure of this information would constitute a clearly unwarranted invasion of these individuals' personal privacy, and consequently withheld this information pursuant to FOIA Exemptions 6 and 7(C).

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(18) 5 U.S.C. § 552(b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

(19) Exemption (b)(7)(E) has been asserted to protect information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. Within the responsive documents, the FBI applied Exemption (b)(7)(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise known to the public. Specifically, the FBI asserted Exemption 7(E) to protect the following categories of information.

### (b)(7)(E): COLLECTION AND ANALYSIS OF INFORMATION

(20) In this exemption category, the FBI protected the methods the FBI uses to collect and analyze information it obtains for investigative purposes. The FBI asserted this exemption category on page 2 of CIA document C06615364. Specifically, the FBI asserted this category to protect the collection of email information pertaining to the investigation in the consulted records, as well as analysis of the contents and details of those emails. The release of this information would disclose the identity of methods used in the collection and analysis of information, including how and from where the FBI collects information and the methodologies employed to analyze it once collected. Such disclosures would enable subjects of FBI investigations to circumvent similar currently used techniques. The relative utility of these techniques could be diminished if the actual techniques were released in this matter. This in turn would facilitate the accumulation of information by investigative subjects regarding the circumstances under which the specific techniques were used or requested and the usefulness of the information obtained. Release of this type of information would enable criminals to educate themselves about the techniques employed for the collection and analysis of information and therefore allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law and engage in intelligence, terrorist, and criminal activities. Accordingly, the FBI has properly withheld this information pursuant to FOIA Exemption 7(E).

### (b)(7)(E): INTERNAL FBI TELEPHONE NUMBER OF AN FBI SPECIAL AGENT

(21) In this exemption category, the FBI protected the internal telephone number of an FBI Special Agent. The FBI asserted this exemption category on page 1 of CIA document C06615364. Releasing this information would provide criminals with specific targets for attacks

on FBI communications through "spoofing" or other illegal means.[5] For example, "spoofing" occurs when criminals disguise a communication from an unknown source to appear as if the communication is coming from a known, trusted source. Spoofing often occurs with emails, telephone calls, and websites. Criminals then use social engineering techniques to elicit sensitive information from the unsuspecting victim.[6] This can be especially dangerous when criminals spoof numbers of law enforcement agencies to appear as if they are official. Victims of such crimes often feel a higher responsibility to respond to questioning, divulge sensitive information, and have an expectation that the information they provide will only be used for official law enforcement purposes.

(22) Considering the current cyber-security environment where government data breaches and other hacking attempts on government systems are prevalent, it is likely that the

---

[5] According to the Internet Crime Complaint Center, 12,334 people reported being the victims of government impersonation scams in 2020, with losses totaling more than $106 million. On April 20, 2021, the U.S. Attorney's Office for the Western District of Washington announced a recent increase in phone calls that "spoof" the U.S. Attorney's Office main phone number, so the call would appear on the recipient's caller ID as official. The scammers then used a fake name and nonexistent case number to trick the victim, demanding money claiming the money to be for "attorney fees" to resolve the case. In some of the instances, the scammers appeared to have some personally identifiable information on the victim or have reviewed social media posts for information to make their spiel sound credible. This scam is government impersonation fraud, and criminals often threaten to extort victims with physical or financial harm. (See: https://www.justice.gov/usao-wdwa/pr/us-attorney-s-office-warns-scammers-are-spoofing-office-phone-number-try-obtain-money, last accessed Feb. 4, 2022.) On June 3, 2021, the DOJ Office for Immigration Review ("EOIR") announced it was notified of phone calls that spoofed the Office of the Chief Immigration Judge as part of a misinformation campaign. Callers spoofed the Office of the Chief Immigration Judge's main line so that calls would appear to be coming from EOIR on the recipient's caller ID. The caller then posed as EOIR employees and sought personal information from the victims. (See: https://www.justice.gov/eoir/pr/eoir-warns-scammers-spoofing-agency-phone-number, last accessed Feb. 4, 2022.)

[6] Social engineering occurs when criminals manipulate individuals to give up confidential information, such as passwords, in order to gain unauthorized access to sensitive information.

release of this type of information could provide hackers with avenues of exploitation. It is possible they could use social engineering to gain further unauthorized access to FBI systems, view and/or manipulate sensitive investigative data, interfere with the FBI's non-public intranet protocol, and/or hinder the FBI's ability to enforce the law by disrupting the FBI's internal communications and by devaluing public trust. Releasing this information poses substantial risks to the FBI's ability to carry out its mission effectively, could potentially decrease the FBI's effectiveness, and could enable criminals to circumvent the law. Accordingly, the FBI asserted Exemption 7(E) to withhold this information.

## SEGREGABILITY

(23)  As discussed in ¶ 4 *supra*, CIA consulted with the FBI on a total of three (3) pages, all of which the FBI recommended be released in part with redactions per the identified FOIA exemptions herein. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

## CONCLUSION

(24)  The FBI processed for release all reasonably segregable non-exempt information from consulted documents responsive to Plaintiff's request to the CIA that are subject to FOIA. Information was properly withheld pursuant to FOIA Exemptions 6, 7(C), and 7(E). The FBI carefully examined the documents and determined the information withheld from Plaintiff in this case, if disclosed would cause a clearly unwarranted invasion of personal privacy, could reasonably be expected to constitute an unwarranted invasion of personal privacy; and/or would disclose techniques and procedures for law enforcement investigations. After extensive review of the documents at issue, the FBI has determined that there is no further non-exempt

information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of February 2022.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia