IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **THE TRANSPARENCY PROJECT**, <br><br> Plaintiff, <br><br> vs. <br><br> **UNITED STATES DEPARTMENT OF JUSTICE, et al.,** <br><br> Defendants | Case No. 4:20-cv-447-SDJ |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO NON-FBI DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

NOW COMES The Transparency Project, the Plaintiff, responding in opposition to the Non-FBI Defendants' Motion for Summary Judgment ("MSJ") (Doc. No. 51) and cross-moving for summary judgment:

## Introduction

For the reasons set forth in the Unopposed Motion for Extension of Time (Doc. No. 58), Plaintiff's Counsel was unable to complete the Plaintiff's response in opposition to the MSJ. The Plaintiff will therefore address some of the most important issues raised in the MSJ. If the Court grants permission, the Plaintiff will address the remaining issues in an amended response / cross-motion.

Before proceeding further, the Plaintiff should address an important housekeeping matter. According to some authority, a FOIA plaintiff may rely on newspaper articles to establish facts relevant to a motion for summary judgment. *See, e.g., Elec. Frontier Found. v. Dep't of Justice*,

532 F. Supp. 2d 22, 23 (D.D.C. 2008)(considering *Washington Post* article but holding that it was insufficient grounds for reconsideration).

> To be sure, none of [the newspaper articles and human rights reports] ha[ve] been tested and proved in a court of law. But *SafeCard* requires only "compelling" evidence—not tested evidence, and not even evidence that would be admissible at trial. If hundreds of pages of first-hand reports of governmental abuses do not qualify as "compelling" evidence sufficient to justify an investigation into the government's conduct, then I cannot imagine what would. After all, FOIA's purpose, as *SafeCard* recognizes, is to allow the public access to records necessary to ascertain whether the government has acted illegally. If requesters already had tried and tested proof of such illegal activity, then resort to FOIA would be unnecessary. History, moreover, is full of examples of situations in which just these sorts of allegations led to the discovery of serious government wrongdoing—from Teapot Dome in the 1920s to the FBI's COINTELPRO counterintelligence program in the 1960s to Watergate in the 1970s.

*Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 946–47 (D.C. Cir. 2003)(J. Tatel, dissenting); *see also id.* at 930 (majority citing newspaper article); *but see Schoenman v. F.B.I.*, 763 F. Supp. 2d 173, 201 (D.D.C. 2011), aff'd, 841 F. Supp. 2d 69 (D.D.C. 2012)(refusing to consider newspaper article).[1] In this cross-motion, the Plaintiff seeks discovery from the Defendants. If nothing else, the news articles are relevant to show that the Plaintiff is neither acting on a blind hunch nor pursuing a wild goose chase. *See, e.g., Rainsy v. Facebook, Inc.*, 311 F.Supp.3d 1101, 1109 (N.D. Cal. 2019) (court relied in part on newspaper articles when deciding whether to permit discovery). On the contrary, the matters before the Court are ones of significant public interest and exceptional public importance.

---

[1]   The Plaintiff will also rely on reports from the U.S. Government, and those reports are admissible as evidence in any court proceeding against the U.S. Government. *Harper v. United States Dep't of the Interior*, No. 1:21-CV-00197-CRK, 2021 WL 5281589, at *6 (D. Idaho Nov. 12, 2021)(public document admissible under Fed. R. Evid 201(b); 801(d); 801(c)(2)(A)–(D); and 901(b)(1) and (7)); *see also Mezerhane de Schnapp v. United States Citizenship & Immigration Services*, 67 F. Supp. 3d 95, 107–08 (D.D.C. 2014)(out-of-court statements by government employees acting within the scope of their employment were not hearsay and were admissible at summary judgment stage of FOIA case).

**Argument**

**(1) The Defendants' brief and declarations were conclusory.**

The government cannot prevail on summary judgment in a FOIA case when its declarations are conclusory or lack detail. *See, generally, Shapiro v. United States Dep't of Justice*, 507 F. Supp. 3d 283, 339 (D.D.C. 2020) (recounting long history of conclusory declarations from the FBI and denying summary judgment) and *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009) (summary judgment denied where declarations lacked detail).

> Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), citing *John Doe Agency*, 493 U.S. at 151, 110 S.Ct. 471 and *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.' " *Id.*, quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby*, 920 F.2d at 68. Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

*Watkins Law & Advocacy, PLLC v. United States Dep't of Veterans Affairs*, 412 F. Supp. 3d 98, 117 (D.D.C. 2019). The mere fact that the declarations fail to identify the search terms used for some of the Plaintiff's requests is fatal to the MSJ. *SAI v. Transp. Sec. Admin.,* 315 F. Supp. 3d 218, 247 (D.D.C. 2018) (government declaration was inadequate where it did not identify search terms) and *Manatt v. United States Dep't of Homeland Sec.*, 473 F. Supp. 3d 409, 416–17 (E.D. Pa. 2020) (government's declaration was inadequate where it did not identify the search terms used or the custodians or systems searched).

> "An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions," typically through affidavit or declaration. *DiBacco*, 795 F.3d at 195 (quoting *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)). "Summary judgment is warranted based on the agency's affidavit if it

> '<u>describes the justifications for withholding the information with specific detail</u>, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith.' " *Id.* at 196 (quoting *ACLU*, 628 F.3d at 619).

*DiBacco v. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019)(emphasis added). Even with respect to purely legal issues, the MSJ and the declarations make legal assertions without any citation to authority.

**(2)  The Defendants improperly issued *Glomar* responses.**

Many of the Defendants' responses to the FOIA requests were "neither confirm nor deny" answers asserted based national security considerations, a.k.a., "*Glomar* responses." The Plaintiff does not dispute the fact that classified information is exempt from FOIA. The question in this case is whether any such documents are legitimately classified.

> Section 1.7 of Executive Order 13,526 bars classifying information in order to conceal violations of the law. Exec. Order 13,526 § 1.7(1), 75 Fed. Reg. 707 (Jan. 5, 2010). A plaintiff alleging that an agency has classified information to conceal a violation of law "must provide something more than conjecture to show that the agency's withholding decision violates Executive Order 13,526." *Associated Press v. FBI*, 265 F. Supp. 3d 82, 96–97 (D.D.C. 2017). Credible evidence is required. *See Canning v. U.S. Dep't of Just.*, 848 F. Supp. 1037, 1047–48 (D.D.C. 1994) (rejecting plaintiff's challenge where plaintiff presented claims "based primarily on speculation" and failed to present "credible evidence that the agency's motives for its withholding decisions were improper or *98 otherwise in violation of E.O. 12356").

*Smith v. United States Nat'l Archives & Records Admin.*, 415 F. Supp. 3d 85, 97–98 (D.D.C. 2019). Section 1.7 is actually broader than *Smith* suggests. "In no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to: (1) conceal violations of law, inefficiency, or administrative error; (2) prevent embarrassment to a person, organization, or agency; (3) restrain competition; or (4) prevent or delay the release of information that does not require protection in the interest of the national security." Exec. Order 13,526 § 1.7(a).

The government's assertions about Section 1.7(a) are facially untrue. Pages 4-6 of the MSJ recount numerous requests directed at the CIA concerning its domestic activities, *e.g.*, surveillance of journalists in the United States. By statute, the CIA "shall have no police, subpoena, or law enforcement powers or internal security functions." 50 USC § 3036(d)(1); *see also* 50 USC § 3035(b) (explaining the function of the CIA). If the CIA is surveilling journalists in the United States, then the CIA is likely engaged in illegal activity. *Id*. Accordingly, any records of such activity could not be classified. Executive Order 13,526 §1.7(a)(1).[2] It is likewise doubtful that the CIA would have a legitimate national security interest in surveilling U.S. journalists, thus the information should not be declassified on that basis. *Id*. at §1.7(a)(4). Finally, revelations that the CIA surveilled U.S. journalists likely would be very embarrassing to the agency, and records cannot be classified on that basis. *Id*. at §1.7(a)(2).

More obvious cases of improper *Glomar* responses can be found in the various responses to the Plaintiff's requests about whether the U.S. Government inserted "Russian fingerprints" into emails that were hacked or leaked from the Democratic National Committee ("DNC") in 2016. *See* MSJ 3-4, ¶1; 6, ¶1; and 8, ¶1. As the Court is almost certainly aware, the "Russian collusion" scandal consumed Congress and the Executive Branch throughout most of the Trump Administration. *See, generally*, Special Counsel Robert S. Mueller, III, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election* ("Mueller Report"), March 2019, U.S. Department of Justice (https://www.justice.gov/archives/sco/file/1373816/download). "DCLeaks" and "Guccifer 2.0" were alleged to be pseudonymous Russian entities, and they were blamed for stealing and

---

[2] At the very least, the CIA should not be permitted to categorically refuse to confirm or deny whether it has surveilled *any* journalists in the United States.

distributing the DNC emails, a fact reflected in U.S. Government documents and the Defendants' own evidence. *See* Doc. No. 52-1, pp. 920-921 and Mueller Report, Vol. I, pp. 4, 36, 41-49, 65, and 176. Likewise, COZY BEAR and FANCY BEAR purportedly were Russian entities involved in hacking the DNC emails. *See* Garrett M. Graff, "Indicting 12 Russian Hackers Could Be Mueller's Biggest Move Yet," July 13, 2018 *Wired* (https://www.wired.com/story/mueller-indictment-dnc-hack-russia-fancy-bear). Based on a tip, the Plaintiff requested records to determine whether DCLeaks, Guccifer 2.0, COZY BEAR, and FANCY BEAR were fabricated by U.S. intelligence agencies for domestic political purposes, namely to undermine (and potentially overthrow) the President of the United States with accusations that he "colluded" with Russia.

One would expect the CIA, NSA, and ODNI to loudly and vehemently deny that they would ever do such a thing. Instead, they issued *Glomar* responses, refusing to confirm or deny that they have any responsive records. They cannot escape accountability so easily. For starters, any such activity on the part of the intelligence agencies would be flagrantly unlawful, thus classification would be prohibited by Section 1.7(a)(1). If government personnel attempted to undermine or overthrow a Presidential administration, then they violated the prohibition against rebellion and insurrection. *See* 18 U.S. Code § 2383. Likewise, they violated the Constitution insofar as all executive power is vested in the President of the United States, not a group of subversive bureaucrats whose authority legally derives from the President's. *See* U.S. Constitution, Article II, Section 1. And if intelligence personnel helped the FBI secure search warrants for individuals like Carter Page when they knew the "Russian collusion" premise was false, *see* David Shortell and Evan Perez, "Two of four FISA warrants against Carter Page declared invalid," January 23, 2020 CNN (https://www.cnn.com/2020/01/23/politics/fisa-carter-

page-warrants/index.html), then they violated the prohibition on maliciously procuring search warrants. *See* 18 U.S. Code § 2235. The intelligence agencies cannot hide such an illegal scheme beneath the veneer of classification. Exec. Order 13,526 § 1.7(a)(1). Similarly, there is no national security interest in trying to protect a corrupt domestic political scheme. *Id*. at §1.7(a)(4). And although the revelation of such a scheme would be extraordinarily embarrassing to the intelligence agencies, that militates against classification. *Id*. at §1.7(a)(2).

The National Security Division ("NSD") also invoked *Glomar* improperly, but for a different reason: "NSD interpreted Plaintiff's June 18, 2020 request to NSD seeking surveillance records of Edward Butowsky and Matt Couch as seeking NSD records regarding surveillance that, should they exist, would have been authorized under the *Foreign Intelligence Surveillance Act of 1978* (FISA), *codified at* 50 U.S.C. § 1801, *et seq*." MSJ 27. Nothing in the Plaintiff's request supports such a narrow interpretation. By its plain terms, the Plaintiff's request was not limited to records obtained via FISA. If the NSD obtained surveillance records from other sources, then those records should be identified and produced. And the Plaintiff is not asking NSD to disclose exactly *how* the records were obtained, *e.g.*, by what particular technology. The Plaintiff merely requested what was in the records.

Another example illustrates the Defendants' misuse of classification. The CIA argues that it cannot be compelled to provide records about the DNC hack because if it "were to confirm the existence of records responsive to this item in the request, such confirmation would show that the Agency devoted resources to this subject and determined the cause of the 2016 data breach." MSJ 42. This is completely disingenuous, because it is already matter of public record that the CIA devoted resources to this subject. *See, e.g.,* Zack Beauchamp, "The key findings from the US intelligence report on the Russia hack, decoded," January 6, 2017 *Vox*

(https://www.vox.com/world/2017/1/6/14194986/russia-hack-intelligence-report-election-trump). Similarly, the CIA claims it cannot disclose whether it surveilled Edward Butowsky of Texas or Matt Couch of Arkansas. MSJ 43. As explained above, the CIA has no authority to surveil U.S. citizens on U.S. soil, therefore it has no legitimate claim to an exemption. Elsewhere, the CIA claims that information must be withheld because it contains information about covert personnel, covert locations, intelligence methods and activities, classification and dissemination markings, and code words and pseudonyms, MSJ 68-73, but the CIA fails to explain why such information cannot be redacted. Likewise, it fails to explain why the information on pages 79-83 of the MSJ cannot be redacted. The CIA has therefore failed to meet its burden for withholding.

**(3)  The National Security Agency and the National Security Act.**

The MSJ cites Section 6 the National Security Act of 1959, which states that "[n]othing in this chapter or any other law… shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof." 50 USC § 3606. That certainly exempts some NSA records, but by no means all of them. The records sought by the Plaintiff may have originated with other agencies and yet found their way to the NSA, therefore such records would not disclose any function of the NSA or information about its activities. *See Shapiro v. Cent. Intelligence Agency*, 170 F. Supp. 3d 147, 158–59 (D.D.C. 2016) (records in the possession of the NSA might not reflect the function or activities of the NSA). Accordingly, the NSA cannot categorically refuse to search for or produce records solely on the basis of 50 USC § 3606.

**(4) The CIA waived its claim to legal privileges.**

On pages 75-79 of the MSJ, the CIA seeks exemptions on the grounds of the deliberative process privilege, the attorney work-product privilege, or the attorney-client privilege. The CIA's arguments are entirely conclusory, and the MSJ does not provide a single source of legal authority for these arguments. The CIA claims, for example, that witness interview notes are subject to the deliberative process privilege, but it cites no authority. MSJ 76. Insofar as the CIA failed to properly brief these issues, they are waived. *See Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 722 (E.D. Tex. 2019)(inadequately briefed arguments are waived).

**(5) The ODNI's arguments are completely conclusory**

As noted above, "[a]n agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions…" *DiBacco v. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019). The ODNI's arguments are found on pages 83-86 of the MSJ, and they are completely conclusory. Accordingly, the ODNI has failed to meet its burden. *Boggs*, 376 F. Supp. 3d at 722.

**(6) The EOUSA has no basis for withholding records about Seth Rich.**

On pages 595-601 of the exhibits (Doc. No. 51-2), Kara Cain testifies about why the Executive Office for U.S. Attorneys refused to produce records about various individuals, including Seth Rich. The Plaintiff requests that the Court take judicial notice of the Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 46), *Brian Huddleston v. Federal Bureau of Investigation, et al.*, Case No. 4:20-cv-447-ALM (E.D. Tex.). The Department of Justice has a very poor track record when it comes to matters pertaining to Mr. Rich. As explained in the *Huddleston* motion, Mr. Rich is dead, thus he has very little privacy interest to protect. Ms.

Cain's declaration offers a lot of conclusory statements about privacy, but those conclusory statement fail to meet the government's burden for establishing an exemption.

**(7) In camera review is warranted.**

As the *Huddleston* motion explains, in camera review is by no means a given. Nonetheless, it may be appropriate where government defendants have demonstrated bad faith. *Id*.  The Plaintiff avers that the Court should first reject the CIA's, NSA's, ODNI's, and NSD's improper *Glomar* responses and order them to search for and produce records that were improperly classified, *e.g.*, records about DCLeaks, Guccifer 2.0, COZY BEAR and FANCY BEAR. The Court may then review the documents in camera and determine whether the Defendants have been acting in bad faith. If so, then the Court may order broader discovery.

## Conclusion

The Defendants' arguments are conclusory, and their *Glomar* responses, withholdings, and redactions are improper. The Court should order the Defendants to produce the requested documents for the Court's review in camera, then the Court can determine whether to order additional discovery.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
tyclevenger@yahoo.com

**Counsel for Plaintiff**

## Certificate of Service

On April 5, 2022, I filed a copy of this response with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney Andrea Parker, Counsel for the Defendants, at andrea.parker@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger