IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **THE TRANSPARENCY PROJECT**, <br><br> Plaintiff, <br><br> vs. <br><br> **UNITED STATES DEPARTMENT OF JUSTICE, et al.,** <br><br> Defendants | Case No. 4:20-cv-467-SDJ |

## MOTION TO PERMIT SUPPLEMENTAL EVIDENCE IN SUPPORT OF OBJECTION TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

NOW COMES The Transparency Project, the Plaintiff, moving the Court to accept supplemental evidence in support of its Objection to the Report and Recommendation of the United States Magistrate Judge (hereinafter "Objection") (Dkt. #68):

### Introduction

A lot has happened since the Plaintiff filed its Objection on September 26, 2022. Elon Musk purchased Twitter in late 2022, *see* James Clayton and Peter Hoskins, "Elon Musk takes control of Twitter in $44bn deal," October 28, 2022 *BBC News*, https://www.bbc.com/news/technology-63402338 (attached as Exhibit 1),[1] and a string of disclosures from the company (known as the "Twitter Files") have since revealed a symbiotic, Orwellian relationship between the U.S. Government and the social media giant. *See* Aimee Picchi, "Twitter Files: What they are

---

[1] As witnessed by his electronic signature below, Ty Clevenger declares under penalty of perjury under the laws of the United States that (1) his factual statements herein are true and correct and (2) the exhibits to this motion are true and correct copies of the documents that he represents them to be.

and why they matter, December 14, 2022 CBS News," https://www.cbsnews.com/news/twitter-files-matt-taibbi-bari-weiss-michael-shellenberger-elon-musk/ (Exhibit 2) and Lee Fang, "Twitter Aided the Pentagon in its Covert Online Propaganda Campaign," December 20, 2022 *The Intercept*, https://theintercept.com/2022/12/20/twitter-dod-us-military-accounts/ (Exhibit 3); *see also Missouri v. Biden*, No. 3:22-CV-01213, 2022 WL 18142525 (W.D. La. Oct. 21, 2022) (granting depositions of senior executive branch officials based on collusion with social media companies). Portions of the Twitter Files are relevant to the Objection, and the Plaintiff seeks permission to supplement its Objection with that evidence. Separately, Plaintiff's Counsel was contacted by William Binney, Jr., a former senior official with the U.S. National Security Agency, on June 30, 2023 regarding additional information that may be of relevance to the Court's analysis of the Objection. Plaintiff's Counsel then conferred with Mr. Binney's former colleague, Kirk Wiebe, and the Plaintiff seeks to supplement the record with Mr. Wiebe's declaration.

## Argument

This Court has the discretion to consider amended or supplemental evidence after a motion for summary judgment has been submitted. *Wright v. Smith*, 737 F. App'x 183, 186 (5th Cir. 2018). Furthermore, the Court may consider supplemental evidence after a magistrate judge's report and recommendation has been filed:

> In this circuit, when objecting to a magistrate judge's report and recommendation on summary judgment, litigants may submit additional evidence for the district court's de novo review. This court held in *Freeman v. Bexar County,* 142 F.3d 848, 852–53 (5th Cir.1998), though, that the district court is not necessarily required to accept the new evidence. Rather, the district court has discretion to determine whether, in light of all pertinent circumstances, the new evidence should be accepted. *Id. See also Performance Autoplex II Ltd. v. Mid–Continent Cas. Co.,* 322 F.3d 847, 862 (5th Cir.2003) (per curiam) (applying *Freeman* ).

*Davis v. Fernandez*, 798 F.3d 290, 292 (5th Cir. 2015). This case concerns matters of

extraordinary public importance. In particular, the Plaintiff seeks records regarding whether the Central Intelligence Agency tried to frame and/or overthrow the President of the United States. *See, e.g.*, Report & Recommendation 12, quoting Dkt. #5 at 22-24. Furthermore, the proffered evidence from Twitter was unavailable at the time the Plaintiff filed its Objection. Both factors weigh heavily in favor of permitting the Plaintiff to submit supplemental evidence.

In the Objection, the Plaintiff noted that the D.C. Circuit and Second Circuit previously rejected the CIA's use of *Glomar* for purposes of denying the obvious. Objection 10, citing *New York Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100 (2d Cir. 2014), *opinion amended on denial of reh'g*, 758 F.3d 436 (2d Cir. 2014), *supplemented*, 762 F.3d 233 (2d Cir. 2014) and *Am. Civil Liberties Union v. C.I.A.*, 710 F.3d 422 (D.C. Cir. 2013). Analogously, circuit courts have rejected the use of Exemption 7(E) where a particular law enforcement technique is obvious or widely known. *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1191 (11th Cir. 2019)("Our sister circuits have held, and we agree, that law enforcement techniques or procedures that are universally known to the public cannot be shielded from disclosure under the Act") citing *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 551 (6th Cir. 2001); *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1064 (3d Cir. 1995); and *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995).

In one of the FOIA requests at issue in the Objection, the Plaintiff sought records about whether the CIA created fake Twitter accounts for domestic political purposes. In late December, Twitter revealed that the U.S. Department of Defense had, with the company's approval, created and utilized fake accounts for the purpose of advancing the military interests of the United States Government (hereinafter "USG"). *See* Lee Fang (Exhibit 3). [2] That revelation should have come

---

[2] Although the U.S. Government itself may not have acknowledged creating fake Twitter accounts, at

as no surprise, because the USG itself accused other countries of creating fake Twitter accounts for propaganda purposes. *See* Special Counsel Robert S. Mueller III, "Report On The Investigation Into Russian Interference In The 2016 Presidential Election," U.S. Department of Justice, https://www.justice.gov/archives/sco/file/1373816/download (excerpt attached as Exhibit 4). In fact, this litigation arose in part because the USG accused the Russian Government of creating fake Twitter profiles. *Id*. and Dkt. #5 at 22-24. It is no secret that intelligence agencies use such methods, *id*., so there is no need to obfuscate whether the CIA uses such methods. *See, generally, Broward Bulldog*, 939 F.3d at 1191.

In his declaration, Mr. Wiebe explains why national security would not be compromised if the CIA acknowledged that it had created fake Twitter accounts. *See* Declaration of Kirk Wiebe (Exhibit 5).[3] The closer question is whether national security could be compromised if the CIA acknowledged that it created *specific* Twitter profiles like "Guccifer 2.0" and "DCLeaks." Here again, the answer is no. Guccifer 2.0 and DCLeaks served only one purpose during their short lifespans, namely the dissemination of domestic political information that purportedly was hacked from domestic sources. *See* Guccifer 2.0 website, https://guccifer2.wordpress.com/ (Exhibit 6) and DC Leaks website, https://dcleaks.com/ (Exhibit 7). It is not as if either account was also used for legitimate intelligence purposes, *e.g.*, trying to discredit or destabilize the government of a foreign adversary. *Id*. Thus if the CIA revealed that it created / operated either account, it would only be revealing its participation in corrupt, illegal, and partisan *domestic*

---

least one court has held that publication from a credible non-government source weighed against the government's invocation of national security considerations. *Washington Post v. U.S. Dept. of Defense*, 766 F.Supp. 1, 13–14 (D.D.C. 1991).
[3] Paragraphs 11-19 of Mr. Wiebe's declaration are not relevant to this case but were included for purposes of future FOIA litigation against the CIA and FBI.

political activities. Those activities would not be grounds for national security classification, Exec. Order 13,527 §1.7(a), ergo they would not be grounds for a *Glomar* response.

Similarly, the CIA cannot plausibly argue that national security would be harmed by revealing whether it inserted "Russian fingerprints" into Democratic National Committee emails that were published by Wikileaks. Not only is that capability widely available in the private sector, the CIA has publicly (albeit indirectly) acknowledged that it possesses the capability to insert "fingerprints" into published emails. *See* Wiebe Declaration (Exhibit 5) ¶¶3-7.

## Conclusion

The Court needs the benefit of the foregoing supplemental evidence when ruling on the Objection, therefore this Motion should be granted and the Report & Recommendations should be overruled.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for Plaintiff**

## Certificate of Service

On March 27, 2023, I conferred via telephone with Asst. U.S. Attorney Andrea Parker, Counsel for the Defendants, and she indicated that the Defendants would oppose this motion.

**/s/ Ty Clevenger**
Ty Clevenger

## Certificate of Service

On March 27, 2023, I filed a copy of this response with the Court's ECF system, which should result in automatic notification via email to Asst. U.S. Attorney Andrea Parker, Counsel for the Defendants, at andrea.parker@usdoj.gov.

**/s/ Ty Clevenger**
Ty Clevenger