IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **The Transparency Project**, <br><br> Plaintiff, <br><br> vs. <br><br> **U.S. Department of Justice, et al.**, <br><br> Defendants | Case No. 4:20-cv-00467 |

**PLAINTIFF'S OBJECTION TO ORDER OF UNITED STATES MAGISTRATE JUDGE**

NOW COMES the Plaintiff, objecting to the March 17, 2025 Order (hereinafter "Order") (Dkt. #85) issued by the magistrate judge:

<u>Argument</u>

**1. The magistrate lacked authority to rule on any of the motions cited in the Order.**

When issues are pending before the district judge rather than the magistrate judge, only the district judge may rule on those issues.

> A <u>district court</u> may receive further evidence when considering objections to a magistrate judge's recommendation and "need not reject newly-proffered evidence simply because it was not presented to the magistrate judge." Thus, the <u>district court</u> erred to the extent it believed it could not review the new evidence. On remand, the <u>district court</u> may consider HR-IT's proffered evidence.

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 726 (5th Cir. 2024)(emphasis added), citing *Davis v. Fernandez*, 798 F.3d 290, 292 (5th Cir. 2015) ("In this circuit, when objecting to a magistrate judge's report and recommendation on summary judgment, litigants may submit additional evidence for the <u>district court's</u> *de novo* review.") (emphasis added).

> [T]he [district court] recognizes that it has the discretion to accept or reject new evidence to the extent objections refer to new evidence and arguments not presented to the Magistrate Judge. A party who objects to a recommendation of a magistrate judge "waives legal arguments not made in the first instance before the magistrate judge." *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) (citing *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994)). Nevertheless, district courts have "wide discretion to consider and reconsider the magistrate judge's recommendation." *Id.* at 852. While the district courts are obliged "to review *de novo* the actual evidence on objected-to findings," they "should not be compelled to ignore that the parties had a full and fair opportunity to present their best evidence to the magistrate judge." *Id.* Similarly, while "performing its open-ended review, the district court need not reject newly-proffered evidence simply because it was not presented to the magistrate judge." *Id.* Its discretion both permits the district court to accept the new evidence through 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), or to reject it. *Id.*

*Guilbeau v. Schlumberger Tech. Corp.*, 719 F. Supp. 3d 702, 711 (W.D. Tex. 2024) (emphasis added). The motion for leave to file supplemental evidence (and the three other motions) pertained to issues that were already pending before the district court, therefore the magistrate was without authority to rule on those motions.

**2. The magistrate's rulings are "clearly erroneous and contrary to law" per Fed. R. Civ. P. 72(a).**

Even if the magistrate had authority to rule on matters pending before the district court, its rulings are "clearly erroneous and contrary to law." *See* Fed. R. Civ. P. 72(a). The magistrate's Order offers little or no discussion of the actual issues raised by the Plaintiff, and it is both "clearly erroneous and contrary to law." *Id*.

**(b) The Order misapprehended the standard for admitting supplemental evidence.**

The Plaintiff does not dispute the fact that the district court has the *discretion* to reject the supplemental evidence. That's a given, but the Order's analysis of *Performance Autoplex* was conclusory at best. Furthermore, *Performance Autoplex* is not a Freedom of Information Act case, and the Plaintiff avers that the unique circumstances of FOIA cases weigh further in support of admitting the supplemental evidence. Whereas *Performance Autoplex* balances the

competing interests of the parties, FOIA litigation involves public interests that go far beyond the interests of the actual litigants:

> Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.*" Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989) (citation omitted).

*Judicial Watch, Inc. v. United States Office of Special Counsel*, 78 F. Supp. 3d 39, 42 (D.D.C. 2015). In this case, the public has an enormous interest in knowing whether intelligence agencies tried to subvert or overthrow the President of the United States. In other words, the records are "needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency*, 493 U.S. at 152. In such a case, the honest mistakes of the undersigned (*e.g.*, in providing URL links at first rather than PDF exhibits) should not weigh so heavily against the Plaintiff, much less against the interests of U.S. citizens around the world. To do so would elevate form over substance.

    **(b) Newspaper articles may be accepted as evidence in the circumstances before the Court.**

The Order cites *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) and *Hicks v. Charles Pfizer & Co. Inc.*, 466 F.Supp.2d 799, 804–05 (E.D. Tex. 2005) for the premise that newspaper articles are inadmissible as evidence, but neither case is a FOIA case, and neither is on point. Before discussing those cases further, the Plaintiff would note that last year the Court did reject a FOIA requestor's attempt to cite media reports as evidence in summary judgment proceedings:

> Huddleston's news articles are inadmissible hearsay as statements "the declarant[s] do[ ] not make while testifying at the current trial or hearing" and that are "offer[ed] in[to] evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c);

- 3 -

> *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) ("The plaintiffs provide only newspaper articles—classic, inadmissible hearsay."). A FOIA plaintiff cannot rely on inadmissible evidence to establish facts relevant to a motion for summary judgment. The only authority Huddleston cites that supports his argument is a dissent in an opinion that is not binding on the Court. *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 947 (D.C. Cir. 2003) (Tatel, J., dissenting). However, the Court is bound by the Federal Rules of Evidence.

*Huddleston v. Fed. Bureau of Investigation*, No. 4:20-CV-447, 2024 WL 3834383, at *3 (E.D. Tex. Aug. 15, 2024). The undersigned represented Plaintiff Huddleston in that case (and Mr. Huddleston intends to file a motion for reconsideration at the appropriate time). Mr. Huddleston presented the Court with an issue that was novel in the Fifth Circuit, *i.e.*, whether the unique circumstances of a FOIA case allow consideration of media reports to determine *whether discovery is warranted*. Unlike summary judgment in almost any other form of civil litigation, the plaintiff in a FOIA case does not seek to prove an ultimate fact. Instead, the fundamental question with a government defendant's motion for summary judgment is whether the government conducted a reasonable search such that the case should be closed or whether the government should keep searching. *See, e.g., Am. First Legal Found. v. United States Dep't of Homeland Sec.*, No. CV 21-2168 (RDM), 2024 WL 4932041, at *3 (D.D.C. Dec. 2, 2024) Relevant case law could only be found outside the Fifth Circuit.

In *Huddleston*, the Court stated that "[t]he only authority Huddleston cites that supports his argument is a dissent in an opinion that is not binding on the Court." *Huddleston v. Fed. Bureau of Investigation*, No. 4:20-CV-447, 2024 WL 3834383, at *3 (E.D. Tex. Aug. 15, 2024), citing *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 947 (D.C. Cir. 2003) (Tatel, J., dissenting). That is not accurate. Mr. Huddleston noted that the *majority* in the D.C. Circuit case also relied on a newspaper article as evidence. *See* Plaintiff's Reply in Support of Corrected Motion for Summary Judgment (hereinafter "Huddleston Reply"), Case No. 4:20-cv-00447-ALM (E.D.

Tex.) (Dkt. #133) p. 3, citing *Ctr. for Nat. Sec. Studies*, 331 F.3d at 930, in turn citing Rachel L. Swarns, "Oregon Muslims Protest Monthlong Detention Without a Charge," *N.Y. Times*, April 20, 2003, at A16. In a Seventh Circuit FOIA case, that court expressly relied on newspaper articles (among other evidence) to rebut an FBI agent's affidavit in support of summary judgment. *Stein v. Dep't of Just. & Fed. Bureau of Investigation*, 662 F.2d 1245, 1254 (7th Cir. 1981). In at least two FOIA cases in D.C. district court, the presiding judges expressly took judicial notice of a newspaper report. *See White Coat Waste Project v. United States Dep't of Veterans Affs.*, 404 F. Supp. 3d 87, 101 (D.D.C. 2019) and *Looney v. Walters-Tucker*, 20 F. Supp. 2d 70, 72 (D.D.C. 1998) (agency failed to search for records related to bank robbery that occurred at a particular address, and newspaper article was evidence that bank robbery had occurred at that address); *see also Hodge v. F.B.I.*, 764 F. Supp. 2d 134, 146 (D.D.C. 2011), aff'd, 703 F.3d 575 (D.C. Cir. 2013) (considering newspaper articles to determine whether FBI previously disclosed records for purposes of FOIA); *Canning v. U.S. Dep't of Just.*, 567 F. Supp. 2d 104, 112 (D.D.C. 2008) (same). Furthermore, Mr. Huddleston noted that even outside the FOIA context, courts have accepted media reports as evidence for purposes of determining *whether discovery is warranted*. See Huddleston Reply 3, citing *Rainsy v. Facebook, Inc.*, 311 F.Supp.3d 1101, 1109 (N.D. Cal. 2019) (court relied in part on newspaper articles when deciding whether to permit discovery); *see also Bagley v. Yale Univ.*, 315 F.R.D. 131, 150 (D. Conn. 2016), as amended (June 15, 2016) (newspaper article relevant to discovery dispute).

> Federal Rule of Evidence 201(b) allows this Court to take judicial notice of facts that are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b); *Taylor v. Charter Med. Corp.,* 162 F.3d 827, 831 (5th Cir.1998). Pursuant to Rule 201(b), Courts have the power to take judicial notice of the coverage and existence of newspaper and magazine articles. *See, e.g., Washington Post v. Robinson,* 935 F.2d 282, 291 (D.C.Cir.1991) (allowing judicial notice of the existence of newspaper articles); *Jackson v. Godwin,* 400 F.2d 529,

536 (5th Cir.1968) (finding that newspapers and magazines allowed in a prison carried extensive coverage of riots to the point where the district court could take judicial notice of such coverage).

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006). In *Lindsey v. Fed. Bureau of Investigation*, the court relied on media reports both to establish certain background facts and to establish *public interest in the subject matter of the request*. 271 F. Supp. 3d 1, 7-9 (D.D.C. 2017). Thus the Court may consider the newspaper reports as evidence.

### (c) Exhibits 1, 2, 3, and 4 deserve the Court's consideration.

The Order professes confusion about why the Plaintiff sought to introduce evidence about the Twitter files, but the question was answered in the Plaintiff's motion:

> In this case, the Plaintiff sought records about whether the CIA created fake Twitter accounts for domestic political purposes. The proffered supplemental evidence from the Twitter Files is important to the Plaintiff's case because it further shows that the CIA's reliance on *Glomar* is unwarranted, namely because the information is not properly classified. In late December, Twitter revealed that the U.S. Department of Defense had, with the company's approval, created and utilized fake accounts for the purpose of advancing the military interests of the United States Government (hereinafter "USG"). *See* Lee Fang (Exhibit 3). That revelation should have come as no surprise, because the USG itself accused other countries of creating fake Twitter accounts for propaganda purposes. *See* Special Counsel Robert S. Mueller III, "Report On The Investigation Into Russian Interference In The 2016 Presidential Election," U.S. Department of Justice, https://www.justice.gov/archives/sco/file/1373816/download (excerpt attached as Exhibit 4). In fact, this litigation arose in part because the USG accused the Russian Government of creating fake Twitter profiles. *Id*. and Dkt. #5 at 22-24. It is no secret that intelligence agencies use such methods, *id*., so there is no need to obfuscate whether the CIA uses such methods. *See, generally, Broward Bulldog*, 939 F.3d at 1191. Because national security would not be harmed by revealing that the CIA uses the same standard methods as other intelligence agencies and even other USG agencies, classification would be improper, as would be the invocation of *Glomar*.

Amended Motion for Leave to File Supplemental Evidence in Support of Objection to Report and Recommendations of United States Magistrate Judge ("Amended Motion")(Dkt. #73) 4-5.[1]

---

[1] Note that the Plaintiff does *not* seek information about CIA Twitter accounts that serve foreign policy or intelligence purposes, but only those Twitter accounts used for domestic political

Exhibit 4 is an excerpt of the Mueller Report. Yes, the undersigned should have attached a PDF copy in his response to the motion for summary judgment rather than relying on a URL link, but as suggested above, "the honest mistakes of the undersigned (*e.g.*, in providing URL links at first rather than PDF exhibits) should not weigh so heavily against the Plaintiff, much less against the interests of U.S. citizens around the world. To do so would elevate form over substance." *Supra* 3.

**(d) The declaration of Kirk Wiebe (Exhibit 5) should be considered by the Court.**

The Order's analysis of the declaration of Kirk Wiebe (Dkt. #73-5) is equally conclusory. Unlike some state rules, nothing in the federal rules required a boilerplate statement that Mr. Wiebe was testifying based on personal knowledge:

> Fifth Circuit precedent allows courts to "reasonably infer[ ]" personal knowledge and competence from the declarant's "positions and the nature of their participation in the matters to which they swore." *DIRECTTV Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005). Personal knowledge "may include inferences and opinions so long as they are grounded in personal observation and experience." *Garcia v. Delta Co.*, No. 3:20-CV-03194-X-BH, 2023 WL 2950632, at *12 (N.D. Tex. Feb. 23, 2023) (Ramirez, J.). Similarly, the advisory committee's notes to Federal Rule of Evidence 602 state that "personal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception." Fed. R. Evid. 602 advisory committee's notes.

*Rios v. Texas Christian Univ.*, 347 F.R.D. 486, 489 (N.D. Tex. 2024). Obviously, much of the content of Mr. Weibe's declaration (*e.g.*, when he served in the Air Force) was based on personal knowledge. The remainder of his declaration was well within the scope of an expert witness.

> "Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on first-hand knowledge or observation." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also* Fed.R.Evid. 701, 702; Charles A. Wright & Victor James Gold, *476 27 Federal Practice & Procedure: Evidence 2d § 6025 ("By allowing experts to base opinions on facts or data that need not be admissible, Rule 703 permits opinions that are not based on

---

purposes, *i.e.*, to advance the domestic "Russian collusion" hoax. Such actions would be illegal and, therefore, not subject to classification. Amended Motion 9-9 (citing authorities).

personal knowledge."). Such a "witness need not have observed or participated in the gathering of the data underlying his opinion. Rather, the personal knowledge requirement hinges on whether the expert personally analyzed the data that was 'made known' to him and formed an expert opinion based on his own assessment of the data within his area of expertise." *Huber v. Howard County, Md.,* 56 F.3d 61, No. 94–1651, 1995 WL 325644, at *5 (4th Cir. May 24, 1995)

*Guzman v. Mem'l Hermann Hosp. Sys.*, 637 F. Supp. 2d 464, 475–76 (S.D. Tex. 2009), aff'd, 409 F. App'x 769 (5th Cir. 2011).

**(e) Exhibits 6 and 7 should be considered by the Court.**

The Order's entire analysis of Exhibits 6 and 7 is as follows: "[T]he content of Exhibits 6 and 7 is difficult to follow and in any event, the Exhibits do not appear to support Plaintiff's conclusions regarding national security." Contrast that with the Amended Motion:

> Guccifer 2.0 and DCLeaks served only one purpose during their short lifespans, namely the dissemination of domestic political information that purportedly was hacked from domestic sources. *See* Guccifer 2.0 website, https://guccifer2.wordpress.com/ (Exhibit 6) and DC Leaks website, https://dcleaks.com/ (Exhibit 7). It is not as if either account was also used for legitimate intelligence purposes, *e.g.*, trying to discredit or destabilize the government of North Korea. *Id*. The Plaintiff was not aware of the foregoing facts (illustrated in Exhibits 6 and 7) until Mr. Wiebe made Plaintiff's Counsel aware of them, hence the Plaintiff did not submit them sooner.

Amended Motion 6; *see also* Declaration of Kirk Wiebe (Dkt. #73-5) ¶10. The exhibits are relevant to the question of whether the CIA created fake Twitter profiles for domestic political purposes, namely to sabotage a Presidential candidate, thus they should be admitted.

## Conclusion

The magistrate had no authority to issue the Order insofar as the matters were already pending before the district court. Even if the magistrate had authority to issue the Order, it should be overruled because it is "clearly erroneous and contrary to law." Fed. R. Civ. P. 72(a).

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for The Transparency Project**

**Certificate of Service**

I certify that a copy of this document was filed with the Court's ECF system on March 26, 2025, which should result in automatic notification via email (James.Gillingham@usdoj.gov) to Asst. U.S. Attorney James Gillingham, counsel for the Defendants.

**/s/ Ty Clevenger**
Ty Clevenger