**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| THE TRANSPARENCY PROJECT,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, et al<br><br>Defendants. | CIVIL ACTION No. 4:20CV467 |

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR APPOINTMENT OF A SPECIAL MASTER**

Defendants file this response in opposition to Plaintiff's Motion for Appointment of a Special Master, Doc. 91.[1]

The parties litigated the adequacy of the Non-FBI Defendants' searches and withholdings through cross-motions for summary judgment in 2022. After considering that record, the Magistrate Judge issued a 92-page Report and Recommendation addressing those issues (the "R&R"). Doc. 64. Where the record was insufficient to evaluate one search—the National Security Division's—the Magistrate Judge identified the deficiency and addressed the deficiency through a typical FOIA remedy, allowing the agency to submit a supplemental declaration. Doc. 64, at 36 ("The Court will permit NSD to submit an additional affidavit to address the adequacy of its search.") NSD supplied a supplemental declaration and renewed its motion for summary judgment

[1] Plaintiff filed a substantially similar motion two days later in *Transparency Project v. Department of Justice*, 4:21-cv-121 (E.D.Tex.), Doc. 82. A similar motion is also pending in *Huddleston v. FBI*, 4:20-cv-447 (E.D. Tex.), Doc. 258.

on the remaining issue of the adequacy of NSD's search. Doc. 69. Plaintiff objected to the R&R and has spent the next four years asking the District Court to resolve that objection.

As recently as March 2025, Plaintiff complained that the case had been "in limbo" and moved the Court to expedite ruling on its objection. Doc. 84, at 1–2. On October 5, 2026, the same day Plaintiff filed this Motion, Plaintiff moved for leave to file a supplemental brief and additional information in support of its objection to the R&R. Docs. 88–90. There, Plaintiff insisted that the decision of whether or not to consider the supplemental information is "committed by statute and rule to the District Judge," and emphasized that the "ultimate decision is made by the district court," and represented that "[t]he brief requires no additional discovery." Doc. 88, at 1–2, 5.

Plaintiff seemingly takes a contrary position here. Federal Rule of Civil Procedure 53(a)(1)(C) permits the appointment of a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). Plaintiff claims that this standard is satisfied because the record allegedly requires a "hands-on inquiry" into six agencies' record systems. Doc. 91, at 2. But Plaintiff's own litigation conduct shows the opposite, as does the Court's handling of this case to date. The Magistrate Judge has already addressed the core search-adequacy and withholding issues through ordinary FOIA procedures. And the District Judge possesses the authority to conduct *de novo* review, including, if appropriate, the consideration of new evidence, request supplemental declarations, conduct *in camera* review, or employ other ordinary procedures warranted by the record. Plaintiff spent years arguing that the District Judge should do just that. Its change in position does not justify appointment of a special master at this late stage of litigation, it shows that it is not necessary or appropriate to appoint a special master.

The materials Plaintiff cites do not establish a factual predicate justifying a different result. Plaintiff leans heavily into evidence regarding "Prohibited Access," Sentinel placeholders, false-negative searches, and physical files stored in a Sensitive Compartmented Information Facility ("SCIF"). But these concern FBI records and FBI record systems. Plaintiff acknowledges that the FBI claims are not the claims addressed in the pending R&R, Doc. 90, at 16, but nevertheless attempts to extrapolate those FBI practices to the non-FBI Defendants, claiming that their searches somehow "inherit" the issues it has with the FBI. But this is argument, not a showing that the non-FBI defendants were affected by those purported FBI practices.

Finally, the rationale underlying Plaintiff's Rule 53 request is made explicit in the proposed supplemental brief on which the Motion relies. Plaintiff proposes a special master as a means by which the Court "may resolve these questions without bearing the entire burden itself." Doc. 90, at 3. However, Rule 53(a)(1)(C) does not authorize appointment of a special master merely because judicial work may be substantial or burdensome. The Rule requires a showing that the matter cannot effectively and timely be addressed by an available district or magistrate judge. Plaintiff has not made that showing.

## ARGUMENT

### I. Plaintiff cannot satisfy Rule 53(a)(1)(C).

Rule 53 governs the appointment and use of special masters in civil litigation. Fed. R. Civ. P. 53. Special masters are intended to aid the judge in performance of specific judicial duties as they may arise in a case and not to displace the court. *La Buy v. Howes Leather Co.*, 352 U.S. 249, 256 (1957). Reference to a special master should be the exception and not the rule. Fed. R. Civ. P. 53, advisory committee notes (2003) ("The core of the original Rule 53 remains, including its prescription that appointment of a master must be the exception and not the rule.").

Rule 53(a)(1) permits a district court to appoint a special master to: (1) "perform duties consented to by the parties;" (2) "hold trial proceedings and make recommended findings of fact on issues to be decided without a jury" when the appointment is warranted by "exceptional condition; or the need to perform an accounting or resolve a difficult computation of damages;" or (3) "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a). Plaintiff invokes the third category. That provision imposes its own substantial limitation: the matter must be one that "cannot be effectively and timely addressed by an available district judge or magistrate judge."

The standard set forth in Subsection (C) is not satisfied merely because a case is complex, time-consuming, or involves a substantial record. In *LaBuy*, the Supreme Court rejected complexity, docket congestion, and the length of time to trial as sufficient reasons to transfer the adjudicative work of a case to a special master. 352 U.S. at 258–59. Although that case involved the "exceptional condition" ground for appointing a special master, those principles remain relevant to Rule 53(a)(1)(C), particularly given the Advisory Committee's notes that appointment should remain exceptional.

**a. Plaintiff's litigation conduct contradicts the showing Rule 53 requires.**

Throughout the litigation, Plaintiff has maintained that the Court can resolve the issues through ordinary judicial procedures. Its complaint has been about the pace of adjudication—not the inability of the Court to decide the matters before it. Plaintiff filed its objection to the R&R on September 26, 2022. Doc. 68. It then repeatedly sought to offer additional material to the District Judge for consideration as part of its de novo review. Docs. 71, 73, 80, 90. It also sought to expedite the Court's resolution of the objection. Doc. 80, 84. At no point in the last four years did the Plaintiff contend the District Judge was not capable of resolving the objection. To the contrary,

Plaintiff's repeated position was that the District Court could resolve the objection, but that it should do so sooner.

The same is true with respect to Plaintiff's objection to the Magistrate Judge's March 17, 2026 Order. There, Plaintiff emphasized that the District Court has authority and wide discretion to receive additional evidence during de novo review and that the issues were already pending with the district court and therefore should not have been resolved by the magistrate judge. Doc. 86, at 2.

Plaintiff maintained that position even as it filed the present Motion. In a filing made the same day, Plaintiff insisted that the decision as to whether to receive new evidence is committed to the District Judge, the decision is made by the District Court, and that the supplemental brief required no new discovery. Doc. 88, at 1–2, 5.

Plaintiff cannot have it both ways. It cannot argue in one filing argue that the District Judge is a proper decision maker,[2] that ordinary supplemental briefing is sufficient without discovery, and simultaneously assert that the same matters "cannot be effectively and timely addressed" by a district or magistrate judge.

**b. The age of the pending objection does not establish that a special master is necessary.**

Plaintiff relies on the age of its objection in support of its request for a special master. But a delay in receiving a ruling does not establish that the Court is unable to adjudicate the matter.

[2] To the extent Plaintiff's incorporation of its supplemental brief is intended to invoke *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), as further support for appointment of a special master, that argument does not advance the Rule 53 inquiry. This Court has already held in another FOIA case that *Loper Bright* is inapplicable where the Government did not seek and the Magistrate Judge did not apply Chevron deference. *Ivanovskis v. FBI*, No. 4:23-cv-531-SDJ-AGD, 2025 WL 2778978, at *1 (E.D. Tex. Sept. 29, 2025).

More importantly, Plaintiff's proposed procedure would create a substantial new layer of litigation and would actually increase the time to receiving a ruling on the objection. Plaintiff proposes a process to nominate candidates, selection by the Court, security-clearance procedures, production of materials, new searches, testimony and discovery—despite representations in his motion to file supplemental brief that the brief would require "no additional discovery--180-days for the master's work, and ultimately de novo review by the Court. Doc. 91-1, ¶¶ 1–6.

Plaintiff's proposal does not remedy an issue that "cannot be effectively and timely addressed" by a magistrate or district judge. It instead creates an additional investigative proceeding before returning the dispute to the Court for the same de novo revie Plaintiff has been requesting. That is not the proper use of a special master and fails to satisfy Rule 53(a)(1)(C).

## II. The record in this case demonstrates that the issues Plaintiff presents can be resolved by the Court.

The history of this case disproves Plaintiff's premise. The Magistrate Judge did not simply accept every agency affidavit at face value. After reviewing the Non-FBI Defendants' motion for summary judgment and supporting affidavits, the Magistrate Judge determined that NSD's original declaration did not provide sufficient detail concerning the adequacy of its search. The Court denied summary judgment without prejudice on that discrete issue and permitted NSD to submit a supplemental declaration. NSD did so. In its notice of filing, NSD expressly stated that its declarant Kevin Tiernan's declaration serves as a supplement to the original declaration by Patrick Findlay on behalf of NSD and demonstrates the adequacy of NSD's search. Doc. 69.

This sequence establishes that this case is functioning as an ordinary FOIA adjudication. If on *de novo* review, the Court concludes that another declaration requires clarification, the Court can require that clarification. If a particular record requires *in camera* review, FOIA permits that examination. In short, the Court possesses mechanisms necedsdary to address any lingering issues.

But none of these potential issues requires a new, parallel investigation and adjudication by a special master.

**III. Plaintiff's newly cited materials do not establish the need for a special master.**

**a. Plaintiff's FBI evidence does not establish that the Non-FBI Defendants' searches were defective.**

Paragraph 1 of the Motion identifies several matters that supposedly make a special master necessary including a Foreign Intelligence Surveillance Court ("FISC") finding concerning FBI querying procedures; the Inspector General's finding that the Crossfire Hurricane file was designated "prohibited"; FBI records concerning "prohibited status" and placeholder entries; material concerning the Intelligence Community's attribution assessment; and entries in an FBI binder marked "FISC ordered Sequestered." Dkt. 91 at 1–2. Plaintiff extrapolates from these discrete matters to assert more generally that this case involves "classified records held by several agencies, in record systems designed in part to keep records out of ordinary searches." *Id.* at 2.

The evidence Plaintiff actually cites does not support that generalization. Its evidence concerning search-defeating records architecture is FBI-specific. The MARCH TOLL documents concern FBI "prohibited status," FBI Sentinel placeholders, FBI physical case files, and FBI records maintained in an FBI SCIF. Doc 90 at 16. Plaintiff's Exhibit H likewise describes the effect of "Prohibited Access" on searches conducted in **Sentinel**, including the possibility of false-negative Sentinel results. Dkt. 90 at 17. And the Inspector General material cited by Plaintiff concerns the FBI's designation of the Crossfire Hurricane investigative file as "prohibited." *Id.*

But the objection involves a motion for summary judgment filed by the Non-FBI Defendants. As it must, Plaintiff acknowledges that these FBI claims are not the claims addressed in the pending Report and Recommendation. Dkt. 90 at 16. It nevertheless asserts that "the Department's other components, including the National Security Division, draw on FBI-held

Crossfire Hurricane records and inherit the same false negatives," and then asks that "every Defendant" be required to disclose whether it holds records in "comparable status." *Id.* at 17.[3]

That is not an evidentiary nexus. Plaintiff identifies no evidence that CIA, NSA, or ODNI uses Sentinel; no evidence that records in those agencies' custody were designated "Prohibited Access;" no evidence that their records systems generate the purported false-negative phenomenon described in the materials Plaintiff identifies; and no evidence that any particular search described in their declarations failed because of a similar restriction. And as discussed above, NSD described custodial searches of email accounts, personal drives, and shared drives—not of FBI Sentinel.

The logical gap is significant. Plaintiff argues that one agency employs a particular records-access mechanism and asks the Court to appoint a special master to investigate whether other agencies might employ something comparable. But the absence of evidence establishing that connection cannot itself become the justification for appointing a special master to search for one.

**b. The later-released materials incorporated from Doc. 90 do not establish that the earlier searches were defective or that a special master is necessary.**

The Motion expressly incorporates factual theories addressed in Parts IV-V of Plaintiff's Supplemental brief and relies on these later-released materials as reasons that the agencies' declarations can no longer be credited. Doc. 90, at 1–2.[4] Even assuming those later disclosures are relevant to the pending objection, the releases do not themselves establish that the earlier searches were unreasonable. In the FOIA context, the question "is not whether there might exist any other

[3] Plaintiff's characterization of the FBI FOIA searches is itself disputed by evidence submitted in *Huddleston*. There, the FBI explained that its Record/Information Dissemination Section (RIDS), which conducts searches responsive to FOIA requests, has Sentinel access that includes prohibited access cases and that RIDS searches include prohibited files to the extend they exist. *Huddleston v. FBI*, No. 4:20-cv-447-ALM, Dkt. 209-1, ¶ 8 (E.D. Tex. Aug. 22, 2025). The point here, however, is narrower. Even accepting Plaintiff's characterization of the FBI materials, it does not establish that those FBI-specific practices affected the searches performed by the non-FBI Defendants.

[4] Plaintiff also argues that a "request for the same relief is now pending before another judge of this District on the **same 2026 releases**." Doc. 91, at 3.

documents possibly responsive to the request, but whether the search for those documents was adequate." *Jett v. FBI*, 139 F.Supp.3d 352, 265 (D.C. Cir. 2015). Thus, even if potentially responsive documents are located at a later date, it does not mean that the agency's search for documents failed to satisfy its adequacy obligation under the FOIA.[5]

Plaintiff's argument fails to tie these documents to its need for a special master. The Motion fails to show any resulting issues cannot be resolved through ordinary judicial review and therefore fails to satisfy the requirement for appointment of a special master under Rule 53(a)(1)(C).

## IV. Plaintiff's proposed order creates an investigative proceeding rather than assigning a discrete task that the Court cannot effectively and timely address.

The breadth of the relief Plaintiff seeks confirms that it is not asking a special master to perform a discrete task that cannot effectively and timely be addressed by a magistrate or district judge. Instead, Plaintiff seeks to open a parallel investigative and adjudicative proceeding.

Under Plaintiff's proposed order, the special master would receive records and unredacted declarations, review exemptions and segreagability, examine agency records, investigate whether records were "restricted," "prohibited," maintained as placeholders, sequestered by the FISC, or held outside disclosed systems, direct searches, take testimony, advise what additional discovery the master finds warranted,[6] rule on privilege issues, and prepare and file a report and recommendation with proposed findings of facts and conclusion of law. Doc. 91-1, ¶ 3.

[5] Plaintiff's inference also overlooks the nature of some of the responses at issue. Certain agencies did not represent that they searched for documents and found none; they asserted *Glomar* responses, which decline to confirm or deny the existence of official records. *See* Doc. 64, at 20 (In response to part one of the request, NSH issued a *Glomar* response..."); 21 ("NSA issued a *Glomar* response…"); 22 ("CIA issued a *Glomar* response…"). Accordingly, Plaintiff's assertion that either the Defendants' searchers were incapable of finding responsive documents or found them and said nothing, Doc. 90, at 2–3, represents a false dichotomy.

[6] Discovery is disfavored in FOIA litigation. *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.C. Cir. 2003). Judge Mazzant likewise explained in *Huddelston* that "[d]iscovery in FOIA cases is rare and courts should generally order it only 'where there is evidence … that the agency acted in bad faith conducting the search." 4:20-cv-447, 2024 WL 3834383, *9 (E.D. Tex. Aug. 15, 2024).

These are not discrete duties. They encompass many of the core functions ordinarily performed by the Cour tin FOIA litigation, while authorizing an open-ended investigation into multiple agencies' record systems and search practices. Rule 53 permits a special master to aid the Court in performance of judicial duties that cannot be effectively and timely addressed by a district judge. It does not provide a mechanism for creating a second adjudicative function where a special master determines what searches, testimony, discovery, and privilege litigation should occur, makes proposed findings and legal conclusions, and then returns the dispute to the Court for *de novo* review. Plaintiff has not shown that such a proceeding is necessary or that the matters it proposes to refer cannot effectively and timely be addressed through ordinary judicial procedures.

**V. Plaintiff's authorities do not justify the extraordinary relief he seeks.**

Plaintiff's reliance on *Trentadue* illustrates the distinction. In *Trentadue*, the Court appointed a special master to determine whether it had been the victim of fraud. Doc. 91, at 3. The court further explained that use a special master would insulate the court and preserve its ability to maintain its objective role in adjudicating the matter between the parties. Doc. 90-14, at 9.

That circumstance is materially different from this case. Here, Plaintiff argues that later public disclosures call into question earlier agency declarations and therefore warrant a broad inquiry into multiple agencies' record systems. Much of the evidence on which Plaintiff relies, however, concerns FBI-specific practices, while the pending R&R addresses non-FBI defendants. Plaintiff identifies no comparable finding of fraud on the Court, no comparable need to preserve the Court's neutrality from an investigative function, and no basis to conclude the issues presented cannot be resolve through ordinary judicial procedures.

**CONCLUSION**

For these reasons, Defendants respectfully request that the Court deny Plaintiff's Motion.

Respectfully submitted,

JAY R. COMBS
UNITED STATES ATTORNEY

*/s/ James Gillingham*

JAMES GARLAND GILLINGHAM
Texas State Bar No. 24065295
james.gillingham@usdoj.gov
110 N. College, Suite 700
Tyler, TX 75702
(903) 590-1400
Fax: (903) 590-1436

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2026, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

*/s/ James Gillingham*
JAMES GILLINGHAM
Assistant United States Attorney